John FUGITT, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–023–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 15, 1981.

Discretionary Review Refused Dec. 16, 1981.

Donald B. Dailey, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a conviction for Aggravated Robbery; the sentence imposed, thirty years. Appellant asserts six grounds of error, the first three of which concern alleged error on the part of the trial court in overruling various pre-trial motions. A brief review of the facts precipitating these motions will be given here in order to address these grounds of error. The latter three concern alleged error in prosecutorial conduct during the trial.

Appellant arrived in Corpus Christi from Commerce, Texas, with his girlfriend, Linda Forkey and her two daughters on March 20, 1978, having stopped in Temple along the way and purchased two guns, a .30 caliber Enforcer semi-automatic "machine gun type", and a .380 caliber automatic pistol. Upon their arrival, appellant and his companion checked into the Ramada Inn.

At approximately 6:00 p. m., Officers White and Calhoun of the Corpus Christi Police Department arrived at the motel in response to a burglary complaint. Their investigation, which included a five-minute interview with appellant, indicated that appellant had been given the wrong room key, and had walked into someone else's room carrying a gun. Convinced that an innocent mistake had been made, the officers left. Shortly thereafter, Linda Forkey went to pay for the room. A computer check by the clerk revealed the credit card offered by Ms. Forkey to be stolen. Ms. Forkey was apprised of this, whereupon she and appellant immediately left the motel.

Appellant and Ms. Forkey next appear, in their car, outside the home of Royce Reeves in Corpus Christi, at approximately 8:00 p. m. Appellant entered the house through the side door carrying the "machine type gun" and ordered the four occupants to lie on the floor, whereupon he relieved them of their wallets and credit cards. While so doing, a fifth party arrived at the front door. Appellant extended an invitation, at gunpoint, to come in and join the others, and proceeded to subject the new arrival to the same treatment as had been afforded the others. At this point, Linda Forkey entered the house and assisted appellant by "covering" the five on the floor with appellant's gun, while he searched the house. Appellant found some silver dollars and two more firearms which he took and then the two left the Reeves' home.

Officer Garcia of the Corpus Christi Police Department interviewed the victims at the scene of the crime and was given detailed descriptions of their vehicle. Additionally, Officer Garcia was told that appellant had been heard addressing his companion as "Linda".

This information was broadcast on a police bulletin, which was heard by Officers White and Calhoun to whom it became apparent that the individuals described were probably the same two whom they had encountered at the Ramada Inn. White and Calhoun then returned to the motel and learned of the sudden departure of appellant and Ms. Forkey. With the permission of the motel management, the two officers examined the room which had been occupied by appellant. In the wastebasket they discovered an envelope addressed to one Janice Evans in Commerce, Texas. This information was passed on to Officer Garcia. Officer Garcia admitted that he had no indication that this shred of tenuous evidence was in any way connected with the crime he was investigating, but rather, "it was the only evidence I had at the time . . . ." On a "hunch", Officer Garcia called the police department in Commerce, and gave the officer there the same description that had been given to him. The police officer in Commerce was immediately able to supply Officer Garcia with the names of appellant and Linda Forkey, as well as the license plate number of the car as he last recalled it. Officer Garcia then ran the information regarding the vehicle through a teletype machine, and was supplied with the correct plate number. This new information was added to the police bulletin being broadcast. In the early afternoon hours of March 21, 1978, Officer Garza of the Corpus Christi Police Department, while on routine patrol, espied the automobile described in the radio bulletin, with a woman matching Linda Forkey's description sitting in it, and then saw a man matching appellant's description approach it and get in. Officer Garza followed the vehicle for several blocks, waiting for a "back-up unit" to arrive before stopping and arresting appellant and Ms. Forkey.

In his first ground of error, appellant claims that the trial court erred in not impaneling a jury for the purpose of determining his competency to stand trial. A pre-trial hearing was held on appellant's motion at which a psychiatrist of appellant's choosing, Dr. Laurence Taylor, was called to testify. Dr. Taylor testified that he was of the opinion that appellant was competent to stand trial. The only other witness at the competency hearing was the appellant, who asserted that he did not remember the events of the day in question.

■ Appellant asserts that since he cannot remember the events of the robbery due to drinking, he cannot assist counsel in cross-examining the witnesses called against him, and is therefore incompetent to stand trial based upon Tex.Code Crim. Pro.Ann. Art. 46.02, Sec. 1 (Vernon's Supp. 1976). More specifically, appellant asserts error in the trial court's refusal to impanel a jury to determine the question of competency, arguing that the trial judge did not give proper weight "to the various testimony elucidated in the hearing . . . ."

The contention is without merit. It has been held that, regarding a plea of insanity and psychiatric testimony relating thereto, the trial court is the judge of the weight to be given the testimony, and is authorized to reject the defense. *Calzada v. State*, 416 S.W.2d 429, 431 (Tex.Cr.App.1967). The statute authorizing incompetency hearings reads: "*If the court determines* that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine [that issue]. Tex.Code Crim.Pro.Ann., Art. 46.02, Sec. 4 (Vernon's Supp. 1976) (emphasis supplied). It is abundantly clear that the legislature intended to invest in the trial judge the same power to weigh the testimony given and to determine if an issue exists which will require a jury for resolution. See also *Auldridge v. State*, 533 S.W.2d 821 at 823.

Appellant's first ground of error is overruled.

■ In appellant's second ground of error, he contends that the trial court erred in overruling his motion to suppress his confession on the grounds that it was not made voluntarily. The general rule is that at *Jackson v. Denno* hearings the trial judge is the exclusive judge of the witnesses and the weight to be given their testimony. E. g., *Vigneault v. State*, 600 S.W.2d 318, 329 (Tex.Cr.App.1980); *Burks v. State*, 583 S.W.2d 389, 393 (Tex.Cr.App.1979). He may believe or disbelieve all or any part of any witness's testimony. *Hughes v. State*, 562 S.W.2d 857, 863 (Tex.Cr.App.1978).

Appellant cites *Farr v. State*, 519 S.W.2d 876, Tex.Cr.App. wherein the trial court

was reversed on this issue. *Farr* is distinguishable because in that case the testimony of the defendant at the pre-trial hearing regarding the use of threats and physical force was wholly uncontroverted by the State.

Appellant's second ground of error is overruled.

■ Appellant's third ground of error pertains to the alleged nonexistence of probable cause for his arrest. Appellant predicates his argument upon the rule that the test for probable cause where an arrest is made on the strength of a police broadcast is the information known to the officer who made the broadcast. *Washington v. State*, 518 S.W.2d 240, (Tex.Cr.App.1975). He asserts, therefore, that the information concerning appellant's identity and the license number and registration of his vehicle "constituted a mere hunch" since it was discovered as a result of Officer Garcia's inquiry of the Commerce Police Department, which act itself was, admittedly, a hunch.

The fatal flaw in appellant's argument is the quantum leap made from broadcasting information which is itself a hunch, to broadcasting information acquired by following through on hunches. Officer Garcia did not *provide* information that constituted a mere hunch. He followed a tenuous lead, the only lead he had, utilizing accepted police procedure, i. e., contacting another police department, running known information concerning a vehicle through a computer. He thereby acquired solid, detailed information absolutely identifying appellant, his companion, and the vehicle in which they were driving. In turn, he supplied *that* information to the dispatcher to be included in the bulletin. The information actually supplied was known to him, and was not a "mere hunch". To hold as appellant urges would amount to a holding that every scintilla of information acquired by the police, every single lead, must in itself constitute probable cause before it can be investigated further, or else be disregarded entirely.

Appellant's third ground of error is overruled.

Appellant's fourth and fifth grounds will be considered together. The fourth ground of error brought by appellant asserts that the trial court erred in overruling his motion for a new trial after the robbery victim testified to the effect that he had seen appellant walking towards the garage in which he kept his dog, and that the next morning, which was the next time he saw his dog, the animal had been blinded in one eye. The trial judge sustained appellant's objection to the relevancy of the testimony and instructed the jury to disregard it. His fifth ground complains of the prosecutor again referring to the dog in his closing argument. Again the trial court instructed the jury to disregard the argument. Appellant contends that the testimony and argument were highly inflamatory and prejudicial, and a mere instruction to disregard is completely inadequate.

■ The error in the admission of improper testimony is generally cured by a withdrawal of it and an instruction by the trial court to disregard, "except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Allen v. State,* 513 S.W.2d 556, 557 (Tex.Cr.App.1974). *Bolden v. State,* 504 S.W.2d 418, 420 (Tex.Cr.App.1974). In *Allen,* supra, a character witness was asked with whom he had discussed the defendant's reputation, to which he responded: "With victims of robberies, with people who have bought narcotics." The court found that the adverse effect of this testimony was cured by an instruction to disregard. 513 S.W.2d at 558. In *Boykin v. State,* 504 S.W.2d 855 (Tex.Cr.App.1974), a witness was asked how he had first come to know the defendant. His response: "I was robbed by him." The prejudicial effect was held to have been cured by a timely instruction.

Appellant's fourth and fifth grounds of error are overruled.

Finally, appellant contends that a statement made by the prosecuting attorney during his closing argument amounted to a comment on appellant's failure to testify, constituting reversible error. In discussing appellant's exit from the scene of the crime, the prosecuting attorney noted the following:

"All three witnesses testified that he told them, 'Hey don't come out here, I can see you and I'll be back.', and you know when he went out that door he had this weapon in his hands. This is what he had. What did he mean by that statement? We'll never know. We can only surmise what he meant."

■ The test in determining if a prosecutor's argument is a comment upon the failure of the defendant to testify was stated in *Bird v. State,* Tex.Cr.App., 527 S.W.2d 891 to be "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify." Citing authorities.

In *Barrientes v. State,* Tex.Cr.App., 462 S.W.2d 292, the defendant, in the course of fleeing from the arresting officer, had tossed a screwdriver on to the roof of a building. In his argument to the jury the prosecutor said: "Where did Gus Barrientes get this screwdriver? . . . where did he get it? . . . where did Gus Barrientes get $28.00 in change?" The Court of Criminal Appeals held this language not to be a comment on the failure of Barrientes to testify.

■ In the present case we hold that the argument of the prosecutor was merely an invitation to the jury to speculate on what might have happened to the victims had they followed the defendant on the night of the robbery. The language used does not meet the test in *Bird,* supra, in that the jury would not *naturally* and *necessarily* take the argument to be a comment on the accused's failure to testify. *Bird,* supra, also lays down the test that: "The implication that the language used had reference to the accused's failure to testify must be a

*necessary* one." (Emphasis supplied.) "It is not sufficient that the language might be construed as an implied or indirect allusion thereto." Citing authorities.

Appellant's sixth ground of error is over-ruled.

The judgment is AFFIRMED.