Roger BARNES, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–85–428–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Discretionay Review Refused Oct. 22, 1986.

Robert Weathers, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY, and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a murder conviction, enhanced by proof of a prior felony conviction. Appellant, Roger Lee Barnes,

was found guilty by a jury of his peers and sentenced by them to ninety-nine years in the Texas Department of Corrections. Appellant Barnes urges four grounds of error on appeal.

His first ground of error complains that the prosecutor commented on his failure to testify at the guilt/innocence stage of trial. Appellant's second and third grounds of error contend that the trial court should have granted a directed verdict, because the evidence conclusively demonstrated that appellant could not have killed the murder victim. His fourth ground challenges the sufficiency of the evidence to support his conviction.

The general rules regarding prosecutorial comments on the failure of an accused to testify are well settled. Such comments offend both our state and federal constitutions. *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Crim.App.1985); *Escort v. State*, 713 S.W.2d 733 (Tex.App.—Corpus Christi, 1986, no pet.). Also, TEX.CODE CRIM. PROC.ANN. art. 38.08 (Vernon 1978) expressly prohibits a prosecutor from alluding to or commenting on an accused's exercise of the right not to testify. *Owen v. State*, 656 S.W.2d 458, 459 (Tex.Crim.App. 1983); *Bird v. State*, 527 S.W.2d 891, 893 (Tex.Crim.App.1975). This prohibition is mandatory, and the adverse effect of a reference to the accused's failure to testify is not generally cured by an instruction to the jury to disregard it. *Jones*, 693 S.W.2d at 407; *Overstreet v. State*, 470 S.W.2d 653, 655 (Tex.Crim.App.1971).

The test employed is also well settled. The language used must be viewed from the standpoint of the jury, and the language must be manifestly intended as a comment on the failure to testify, or the implication must be so clear that the jury would naturally and necessarily take it as such a comment. It is not sufficient that the prosecutor's words might be construed as an implied or indirect allusion to the accused's silence. *Bird*, 527 S.W.2d at 894; *Koller v. State*, 518 S.W.2d 373, 375 (Tex. Crim.App.1975); *Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Crim.App.1967).

Appellant's ground of error is directed to the following portion of the prosecutor's final argument at the guilt/innocence portion of trial. The complained-of language is emphasized.

[MR. BABCOCK]: Sometimes people do it (kill) because they are bad. I submit to you that that's what Roger Barnes is. He's just flat out bad, folks. He's bad. He is very bad. *He had an opportunity to do something. Remember, we started with self-defense. He had an opportunity to say something about this. And what did he say? He said nothing. He wasn't even arrested. He didn't even do it.*

MR. WEATHERS: Your Honor, may I approach the Bench?

THE COURT: You may.

MR. WEATHERS: I ask for a mistrial. It's totally reversible error for the Prosecution to bring up anything about whether the Defendant chose to testify or not.

MR. BABCOCK: Your Honor, I'm talking about prior to his arrest.

THE COURT: Overruled.

MR. BABCOCK: Ladies and gentlemen, he said nothing prior to his arrest. He said nothing to Jeffery Griffin. He didn't even tell him that he put the gun back. He said nothing. He didn't call the police and guess what. He works there. He even does what, folks? He even lives there. But did he stay? No. He cut out of there and you heard Sergeant Gardner say, now, why did people do that? Now why did people do that? There's a lot of reasons why people don't do that. But what did Roger Barnes do? Roger Barnes cut out of there and he cut out for two days and laid in wait to put the gun back. That's what he did. Why? Because he used it. Folks, he's bad. He is very bad.

■ We find that the prosecutor's argument was not manifestly intended as a comment on the accused's failure to testify at trial, nor was the argument such that the jury necessarily took it as such. Although the language used might have been construed that way by the jury, it is more

likely that the jury saw that portion of the prosecutor's argument as a reference to the accused's failure to speak to the police or the State's witnesses after the shooting incident but before his arrest. *See Short v. State,* 671 S.W.2d 888, 890–91 (Tex.Crim. App.1984); *Yates v. State,* 488 S.W.2d 463, 466 (Tex.Crim.App.1972). This is especially true because the prosecutor had already argued to the jury that both sides had prepared the jury panel for a case of self-defense since voir dire, but that the testimony of the victim's companion at the time of the shooting destroyed that defense. Furthermore, the prosecutor promptly explained his argument to the trial court and the jury.

We also note that the proper method of preserving error in cases of prosecutorial misconduct is to 1) object on specific grounds; 2) request an instruction that the jury disregard the comment; 3) move for a mistrial. *Koller v. State,* 518 S.W.2d 373, 375 n. 2 (Tex.Crim.App.1975). Although the general rule is that a reference to the accused's failure to testify is not cured by a jury instruction, this rule is, in rare cases, subject to the harmless error rule. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); *Garrett v. State,* 632 S.W.2d 350, 354 (Tex.Crim.App.1982); *Granton v. State,* 415 S.W.2d 664, 666 (Tex.Crim.App.1967); *Rushton v. State,* 698 S.W.2d 451, 457 (Tex.App.—Corpus Christi 1985, pet. filed). Appellant's counsel should have given the trial court the opportunity to cure any harm in the prosecutor's statements. *See Bird v. State,* 527 S.W.2d 891, 893–94 (Tex.Crim.App.1975).

The remainder of appellant's grounds of error challenge the sufficiency of the evidence. In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). In the above case, the Court of Criminal Appeals specifically rejected the proposition, urged by appellant, that the correct standard of review in circumstantial evidence cases is to review the evidence in light of the presumption that the accused is innocent. *See Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

Appellant put on no witnesses, relying instead on cross-examination of the State's witnesses. The State presented the testimony of several police officers involved in the shooting, which occurred in the 1200 block of North Staples Street in Corpus Christi. Officer Revis testified that he and two other officers were dispatched to investigate the shooting about 3:45 on the morning of March 17, 1985. They found the victim, Willie Roy Hines, on Chipito Street, some seventy yards from the newsstand[1] where he had been shot. He was bleeding from his right side.

Officer Revis went to the scene of the shooting within half an hour and found that the newsstand was completely locked. He then went to the residence of the manager, Jeffery Griffin, woke him, and Mr. Griffin accompanied him to unlock the door of his business. Officer Revis and another officer investigated inside and outside the business, but found no trace of the shooting and no weapons. However, he questioned Mr. Griffin as to the identity of a suspect named Roger. Griffin stated that he had employed "Roger" for about three months, and that Roger had closed the business that morning. Officer Revis found a brown wallet containing a driver's license, identification card, and social security card belonging to the appellant, Roger Lee Barnes. A photograph of appellant was also obtained from the wall of the newsstand. Mr. Griffin confirmed that

---

1. The place of business at which the shooting occurred is given various names by the witnesses, and is variously referred to as a newsstand, a pool hall, a shoeshine stand, and a lounge. Since the manager did not dispute that it was known as Jeffery's In-and-Out Newsstand, we refer to the business premises as a newsstand.

Roger Lee Barnes was the man who worked for him.

Officer Tryon, after corroborating much of Officer Revis' testimony, testified that he contacted at the scene a witness to the shooting. Officer Tryon testified that one Hezekiah Johnson told him that a person named Roger Barnes shot Mr. Hines in the back as the victim was leaving the newsstand. This statement was not objected to. Hezekiah Johnson did not testify.

Officer Stimmler testified that he interviewed the victim at Memorial Medical Center, where Mr. Hines was being treated. Hines told him that he had been shot as he was leaving the newsstand. He knew the person who shot him, but didn't know his name. Officer Stimmler then went to the newsstand, where other police officers had already discovered appellant's photograph, driver's license, and identification card. Officer Stimmler returned with these to the hospital, where the victim confirmed that appellant was the one who shot him.

Officer Gardner testified that a .38 caliber bullet was recovered from the body of the victim and given to him. Jeffery Griffin testified that he kept a .38 caliber pistol at the newsstand. He further testified that, on employing appellant to look after the newsstand, he had informed appellant of the presence of the pistol. Mr. Griffin testified that the pistol was missing from its usual place on the morning of the shooting, but that it reappeared two mornings later. He turned it in to the police at that time. He further testified that, except for himself and his wife, only appellant had a key to the newsstand, and that appellant slept there. Mr. Griffin also testified that appellant told him that he had had an argument with Mr. Hines a week or two before the shooting.

Thomas Edward Weatherby testified as follows. He accompanied Willie Roy Hines to the newsstand in the early morning hours of March 17, 1985. They approached appellant, who was behind the counter. About five or six other people were also there. Mr. Hines asked appellant for alcoholic beverages, and appellant told them, in a hostile manner, that he had none. Mr. Hines started to protest, but Mr. Weatherby intervened and persuaded the victim that they should leave. They turned to go and got about halfway to the door when he heard a shot. He then saw the victim pass him, "running kind of low." Mr. Weatherby turned around and saw everyone in the newsstand just sitting there. Realizing for the first time that a shot had been fired, he ran out.

Mr. Weatherby drew three different diagrams of the newsstand, where he placed himself, the victim, and appellant. His testimony during the time he was drawing fails to tie the locations of the various people and things in the newsstand to the diagram that was admitted into evidence. This is because, as he drew, he used inconclusive language, such as "over here" and "on this side." To make matters worse, the diagram which was admitted into evidence appears to be one that was drawn without comment, to replace one that had been drawn in chalk on a blackboard. A third diagram, drawn by appellant's counsel, was used by Mr. Weatherby to describe the shooting. However, this diagram was not the one admitted into evidence, and Mr. Weatherby's testimony, again, ambiguously described locations.

Appellant contends that an examination of Mr. Weatherby's drawing, State's Exhibit 22, taken with the testimony of Dr. Joseph Rupp, the Nueces County Medical Examiner, conclusively establishes that appellant could not have fired the shot that killed the victim. Dr. Rupp testified that the bullet entered the victim's right side. Appellant contends that Mr. Weatherby's drawing placed appellant on the victim's left side.

█ We need not reach this contention. The unobjected-to testimony of Officer Tryon that one Hezekiah Johnson told him that Roger Barnes killed the victim, together with the testimony of the other witnesses placing appellant at the scene and near the .38 caliber pistol that mysteriously disappeared and reappeared two days after the shooting, together with other circum-

stances implicating appellant, is sufficient to justify a rational trier of fact in finding appellant guilty beyond a reasonable doubt. *See Chambers v. State,* 711 S.W.2d 240 (Tex.Crim.App.1986). Although the testimony of Mr. Weatherby appears to place appellant to the left of the victim, his description of the scene is ambiguous, as is the diagram admitted into evidence. Additionally, the jury was entitled to accept the testimony of Officers Tryon and Stimmler as to the statements they took indicating that appellant killed Willie Roy Hines, and reject the testimony of Mr. Weatherby. *See Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Westfall v. State,* 663 S.W.2d 664, 666 (Tex.App.—Corpus Christi 1983, pet. ref'd).

The judgment of the trial court is affirmed.