Affirmed and Memorandum Opinion filed March 19, 2009








 

Affirmed
and Memorandum Opinion filed March 19, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00696-CR

NO. 14-07-00697-CR

____________

 

ANTONIO FITZGERALD COX, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the
180th District Court

Harris County,
Texas

Trial Court Cause
nos. 1084332 & 1084331

 



 

M E M O R
A N D U M   O P I N I O N








A jury
convicted appellant, Antonio Fitzgerald Cox, of two offenses of aggravated
assault and found two enhancement paragraphs to be true.  The jury assessed
punishment at twenty-seven years= confinement for each offense, with
the sentences to run concurrently.  On appeal, appellant contends the
prosecutor improperly commented on appellant=s failure to testify, and the trial
court erred by admitting evidence of third-party threats against the
complaining witnesses.  We affirm.

                                                               BACKGROUND

On
December 31, 2004, the complainants, Wonda Harris and her son Jeremy, noticed
appellant congregating with other men in a vacant lot directly across the
street from the complainants= home.  After seeing appellant drinking and shooting his gun
into the air, Jeremy contacted the police.  Apparently in retaliation,
appellant later returned to the complainants= house with a gun.  He made vulgar
and disparaging remarks about Wonda, prompting Jeremy to Arush at@ appellant.  Appellant shot Jeremy in
the leg, fracturing the teen=s femur, and then shot Wonda in the chest.  Wonda and Jeremy
were transported to the hospital, and both recovered from their injuries. 
Police officers arrived at the scene and, after a struggle, eventually subdued
appellant, who was described as Acombative.@  It was determined that, at some
point, appellant had received a fresh laceration consistent with a Astab wound.@ 

Appellant
was charged with two counts of aggravated assault, to which appellant pleaded Anot guilty.@  A jury convicted appellant on both
counts, and further found the allegations in two enhancement paragraphs to be
true.  For each offense, appellant was sentenced to confinement for
twenty-seven years, with both sentences to run concurrently.  This appeal
ensued.

                               ALLEGED
COMMENT ON FAILURE TO TESTIFY

In his
first two issues, appellant contends that, during closing argument, the
prosecutor improperly commented on appellant=s failure to testify at trial, in violation
of his constitutional and statutory rights.[1] 
We disagree.








A
defendant has a constitutional right against self-incrimination at both the
guilt-innocence and punishment phases of trial.  Wilkens v. State, 847
S.W.2d 547, 553 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1005
(1993).  The United States and Texas Constitutions, as well as Texas
statutory law, forbid the prosecution from commenting directly or indirectly on
a defendant=s decision not to testify.  See Bustamante v. State, 48 S.W.3d
761, 764 (Tex. Crim. App. 2001); Bethel v. State, 842 S.W.2d 804, 808
(Tex. App.CHouston [1st Dist.] 1992, no pet.); U.S. Const. amend. V; Tex. Const.
art. I, ' 10; Code Crim. Proc. Ann. art. 38.08
(Vernon 2005). 








To
violate the right against self-incrimination, the implication that the comment
refers to the defendant=s failure to testify must be clear.  Bustamante, 48
S.W.3d at 765.  Thus, reversal is not warranted if the prosecutor=s comment might be construed as an
implied or indirect allusion to the defendant=s failure to testify.  Oliva v.
State, 942 S.W.2d 727, 734 (Tex. App.CHouston [14th Dist.] 1997), pet.
dism=d, improvidently granted, 991 S.W.2d 803 (Tex. Crim. App. 1998); Bethel,
842 S.W.2d at 808.  Instead, the prosecutor=s comment is improper if it could
only be construed as referring to the defendant=s silence.  See Jordan v. State,
897 S.W.2d 909, 912 (Tex. App.CFort Worth 1995, no pet.).  Stated differently, an
impermissible argument must have left the jurors with the necessary implication
that they have just heard a comment on the defendant=s failure to testify.  Darby v.
State, 922 S.W.2d 614, 618 (Tex. App.CFort Worth 1996, pet. ref=d).  If a prosecutor=s comment is ambiguous and can be
interpreted either as a proper comment or as an improper reference to the
defendant=s failure to testify, we may conclude that the jury understood only the
proper interpretation.  Campbell v. State, 900 S.W.2d 763, 767 (Tex.
App.CWaco 1995, no pet.) (citing Gardner
v. State, 730 S.W.2d 675, 700 (Tex. Crim. App. 1987)); Wells v. State,
634 S.W.2d 868, 873 (Tex. App.CHouston [1st Dist.] 1982, pet. ref=d, untimely filed).

The test
is whether the prosecutor=s argument was manifestly intended to be, or was of such a
character that the jury would naturally take it to be, a comment on the
defendant=s failure to testify.  Bustamante, 48 S.W.3d at 765; Oliva,
942 S.W.2d at 734.  In applying this standard, we analyze the prosecutor=s remark from the standpoint of the
jury.  See Staley v. State, 887 S.W.2d 885, 895 (Tex. Crim. App. 1994), cert.
denied, 514 U.S. 1020 (1995).  We must also consider the context in which
the comment was made, in light of the facts and circumstances of the case.  Bustamante,
48 S.W.3d at 765; Bird v. State, 527 S.W.2d 891, 894 (Tex. Crim. App.
1975).

Appellant=s challenge is to the following
statements during the State=s closing argument:

[Appellant] was so combative.  He was so belligerent that the police
had to use force to get him under control.  If this was a man that, oh, I was
stabbed, it was me, why wouldn=t he call the
police?  Why wouldn=t he stay at the scene?  Why wouldn=t he come up when he saw the cops, go, Thank God. 
Here is my gun.  Let me tell you what happened.  No.  That=s not what he did.[2]

 

Reviewing this closing
argument from the jury=s standpoint, however, we conclude that the prosecutor=s comments clearly were directed at
appellant=s silence during the investigative stage of the encounter and prior to
the time of his arrest, instead of his failure to testify at trial.  See
Short v. State, 671 S.W.2d 888, 890B91 (Tex. Crim. App. 1984); Cuddy
v. State, 107 S.W.3d 92, 96 (Tex. App.CTexarkana 2003, no pet.);  Greenwood
v. State, 740 S.W.2d 857, 859 (Tex. App.CDallas 1987, no pet.); Durant v.
State, 688 S.W.2d 265, 266 (Tex. App.CFort Worth 1985, pet. ref=d).








Appellant
acknowledges that the prosecutor=s comments were intended to describe
an imaginary conversation between appellant and the arresting police officers. 
He suggests, however, that the prosecutor=s use of the word Ayou,@ as emphasized in the above
quotation, denotes a shift in emphasis to appellant=s silence during trial. 
However, we decline to hold that the word Ayou@ must be read as a reference to the
jury, either in the context of this case or as a general rule.  As the Texas
Court of Criminal Appeals has explained:

There is .
. . no particular Atrigger@
word or phrase that makes any jury argument automatically improper.  Rather,
any objectionable argument should be evaluated on a case-by-case basis for what
it would Anecessarily and naturally@ mean to a jury when taken in the full context of its
utterance.  What determines the impermissibility of a reference to the
defendant=s failure to testify is not the use of AI@ or Ahe@ or Ashe@ or any
other word, but rather the entirety of the prosecutor=s statements, taken in the context in which the words
were used and heard by the jury.

 

Cruz v. State, 225 S.W.3d 546, 549 (Tex. Crim.
App. 2007) (emphasis added).  When considered in the context of this case, the
prosecutor=s remarks reasonably can be construed as an attempt to dissuade the jury
from concluding that, in shooting Jeremy, appellant acted in self-defense.

Both
parties raised the subject of self-defense during voir dire.  The jury was then
presented with evidence indicating that, at the time of the shootings, JeremyCwho may have been drinkingCwas angry and Arushed at@ appellant in an effort to fight
him.  When the police officers arrived on the scene, it was discovered that
appellant had received a fresh stab wound of indeterminate etiology.  In fact,
appellant asked the trial court to submit a self-defense instruction to the
jury.  See Tex. Penal Code Ann. ' 9.31 (Vernon Supp. 2008).  Appellant=s request was denied.  However,
during closing argument, appellant=s counsel invited the jury to
speculate about the case of appellant=s stab wound, which he mentioned
twice.








During
the State=s closing argument, then, the prosecutor responded that self-defense was
not an issue for the jury to decide:

You know, [appellant=s counsel] is an
excellent attorney.  He took a case that isn=t a
good case for him.  That really, at first glance, looks like it is going to be
about self-defense and then when you look at the jury charge, there is nothing
about self-defense even in there.  That issue isn=t even before you to decide whether or not [appellant] acted in
self-defense.

 

When considered in light
of the facts and circumstances of this case, the challenged remarks clearly
refer to appellant=s failure, prior to his arrest, to inform the police
that he was acting in self-defense.  Because the prosecutor=s comments pertain to appellant=s silence after arrest, not his
failure to testify, the trial court properly overruled appellant=s objection.  See Cuddy, 107
S.W.3d at 96; Greenwood, 740 S.W.2d at 859.

Therefore,
we overrule appellant=s first two issues.

                                       EVIDENCE
OF THIRD-PARTY THREATS








Appellant=s remaining two issues deal with the
admission of evidence of threats made against the complaining witnesses, were
they to testify against appellant at trial.  Specifically, Jerome HarrisCJeremy=s brotherCtestified that, after appellant was
arrested, appellant=s daughter drove past the complainants= house, holding a handgun and
threatening Ato shoot [their] house up.@  In addition, Jeremy=s father, Fred Shepherd, similarly
testified that one of appellant=s friendsCa man referred to only as ABlack@Cdrove by the complainants= house and promised to Akill [them] all@ should appellant be convicted. 
Appellant objected to both witnesses= testimony.  On appeal, in his third
issue, appellant contends this testimony was inadmissible under Rule 404(b)Cas irrelevant extraneous-offense
evidenceCand Rule 403, because the evidence
was unfairly prejudicial.  In his fourth issue, appellant claims that the
admission of this evidence also violated the Confrontation Clause contained in
the Sixth Amendment to the United States Constitution.[3]

A.        Relevance and Unfair
Prejudice

Generally,
we review a trial court=s admission of evidence under an abuse of discretion
standard.  Walters v. State, 247 S.W.3d 204, 217 (Tex. Crim. App.
2007).  A trial court does not abuse its discretion if its evidentiary ruling was
within the Azone of reasonable disagreement@ and was correct under any legal
theory applicable to the case.  See Winegarner v. State, 235 S.W.3d 787,
790 (Tex. Crim. App. 2007); Bargas v. State, 252 S.W.3d 876, 889 (Tex.
App.CHouston [14th Dist.] 2008, no pet.). 
Because the trial court is usually in the best position to decide whether
evidence should be admitted or excluded, we will uphold its ruling unless its
determination was so clearly wrong as to lie outside the zone within which
reasonable persons might disagree.  See Winegarner, 235 S.W.3d at 790; Hartis
v. State, 183 S.W.3d 793, 801B02 (Tex. App.CHouston [14th Dist.] 2005, no pet.).

Evidence
of other crimes, wrongs or acts may be admissible under Rule 404(b) if the
evidence has relevance apart from character conformity, such as Aproof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.@  Tex. R. Evid. 404(b).  This list of
permissible uses is illustrative, but not exhaustive.  Berry v. State,
233 S.W.3d 847, 858 (Tex. Crim. App. 2007); Garcia v. State, 201 S.W.3d
695, 703 (Tex. Crim. App. 2006).








Initially,
the State asserts that Rule 404(b)=s exclusionary provision does not apply
because  the evidence pertained to the acts of third parties, and not the
appellant.  See McKay v. State, 707 S.W.2d 23, 32 (Tex. Crim. App. 1985)
(AIf the evidence fails to show . . .
that the accused was connected to the offense, then evidence of an extraneous
offense is not established.@); Nguyen v. State, 177 S.W.3d 659, 667 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d) (AEvidence of an extraneous offense
necessarily involves evidence of prior criminal conduct by the defendant.@) (emphasis added).  However, in
2002, the Court of Criminal Appeals urged a broader reading of Rule 404(b) to
include those acts of third parties that may reflect on the character of the
accused.  See Castaldo v. State, 78 S.W.3d 345, 348B49 (Tex. Crim. App. 2002).[4] 
It is questionable whether the testimony about threats implicated appellant=s character, so as to invoke Rule
404(b), because, as both parties acknowledge, there was no evidence indicating
appellant knew aboutCmuch less promptedCthe threats against the complainants= family.  In this case, we need not
decide whether the evidence of third-party acts falls within Rule 404(b)=s coverage, because we hold that the
proffered evidence was relevant apart from any tendency to show character
conformity, anyway.

The
Court of Criminal Appeals has repeatedly held that evidence of threats against
a witness may be admissible to explain the witness=s prior inconsistent statements or
testimony.  See Villarreal v. State, 576 S.W.2d 51, 58 (Tex.
Crim. App. 1978); Antwine v. State, 572 S.W.2d 541, 543 (Tex. Crim. App.
1978); Brown v. State, 505 S.W.2d 850, 855 (Tex. Crim. App. 1974).[5] 
As the Court of Criminal Appeals explained in Antwine:








[I]t
appears that the testimony in question here was elicited on redirect
examination by the prosecutor after the appellant, on cross examination of this
witness, had established that she had, at a prior trial, refused to testify on
the grounds of self incrimination.  On redirect examination the prosecutor was
allowed to show that the witness was in jail at the time she exercised this
right and that persons in jail had threatened to hurt or kill her when she
returned to jail if she testified against the appellant.  From this it appears
that the testimony was allowed to enable the witness to explain why she had
refused to testify at a prior trial after the appellant had injected this prior
act as an attempt to refute and discredit her testimony.  The trial judge
properly allowed this explanation.  AThe
defendant or any other witness is entitled to explain any fact tending to
create a distrust of his integrity or truthfulness.@

 

572 S.W.2d at 543
(citations omitted).

The
State did not introduce the evidence in question during its case-in-chief. 
Instead, the evidence of threats was offered during appellant=s case-in-chief, after appellant
sought to discredit Wonda=s and Jeremy=s testimony that they were the only members of the Harris
household who were present at the time of the shooting.  To accomplish this
end, appellant called Jeremy=s twin brother, Jerome Harris, who testified that he and his
father were also present during the shooting.  Appellant also
called the twins= father, Fred Shepherd, to testify.  Fred insisted he was not
at home at the time; however, appellant presented other evidence indicating
that Fred had previously admitted to witnessing the shooting.  Then, during
closing argument, appellant=s counsel stressed that this inconsistency raised questions
about Wonda=s and Jeremy=s credibility.








We hold
that the evidence of threats against the Harris family was relevant to explain
the inconsistencies in the witnesses= testimony.  Evidence of threats
against any witnesses to the shootings would tend to explain Wonda=s and Jeremy=s motivation to potentially
understate the number of their family members that, in fact, may have witnessed
the shootings.  Therefore, Rule 404(b) would not exclude this evidence of
threats, which was relevant apart from any tendency to demonstrate character
conformity.  See Tex. R. Evid. 404(b); Villarreal, 576
S.W.2d at 58; Antwine, 572 S.W.2d at 543.  Our analysis does not
necessarily end there, however, because evidence that satisfies Rule 404(b) may
still be inadmissible under Rule 403 if its probative value is substantially
outweighed by the danger of unfair prejudice.  See Prince v. State, 192
S.W.3d 49, 56 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d); Thomas v. State, 137
S.W.3d 792, 795 (Tex. App.CWaco 2004, no pet.).

Rule 403
provides that evidence, although relevant, may still be Aexcluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.@  Tex. R. Evid. 403.  The presumption
is that relevant evidence will be more probative than prejudicial.  Shuffield
v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006); Thomas, 137
S.W.3d at 795.  A trial court that undertakes a Rule 403 analysis must balance
the inherent probative value of the proffered evidence and the proponent=s need for the evidence, against the
following counterfactors:

$          the likelihood that
presentation of the evidence will be cumulative or will consume an inordinate
amount of time; and

$          any tendency of the
evidence to suggest decision on an improper basis, to confuse or distract the
jury from the primary issues, or to be given undue weight by a jury not
properly equipped to evaluate its probative value.

See Gigliobianco v. State, 210
S.W.3d 637, 641B42 (Tex. Crim. App. 2006).  We hold that the trial court,
after balancing these considerations, could reasonably have concluded that Rule
403 did not mandate exclusion of the evidence of threats.

1.         Probative Value








This
factor focuses on Athe evidence=s probativeness or how compellingly the evidence serves to
make a fact of consequence more or less probable.@  State v. Mechler, 153 S.W.3d
435, 440 (Tex. Crim. App. 2005).  Inherently, evidence that a witness has been
threatened by a third person is not necessarily probative, in and of
itself, of whether a defendant has committed the charged offense.  In this
case, however, the prosecution offered  two witnesses to the shooting:  Wonda
and Jeremy.  Both claimed they were the only two witnesses to the aggravated assault. 
Therefore, to establish that the charged offense had occurred, the State=s case-in-chief depended upon the
jury=s believing their testimony. 
Therefore, the trial court reasonably could have concluded that the evidence
that the two key eyewitnesses had been threatened, which would explain
inconsistencies in their testimony, was indirectly probative of all of
the elements of the charged offense.

2.         State=s Need for the Evidence

This
factor Aencompasses the issues of whether the
proponent has other evidence establishing this fact and whether this fact is
related to a disputed issue.@  Id. at 441.  Here, the prosecution offered two
eyewitnesses to prove the appellant=s commission of a crime, and
appellant=s counsel impeached the credibility of both witnesses by demonstrating
inconsistencies in their testimony.  In this case, then, the trial court
reasonably could have concluded that the State=s need for the testimony about
threatsCthe only evidence available to
explain the witnesses= inconsistent accounts of who was present during the shootingCwas considerable.  Therefore, we
conclude this factor also weighs in favor of admissibility. 

            3.         Undue Delay
and Needless Presentation of Cumulative Evidence








This
factor examines the time necessary for the proponent to develop and present the
evidence, during which the jury will be distracted from considering the charged
offense.  See id.  In this case, the evidence of threats that was
presented to the jury consumes all of forty-three lines of testimony, that is,
less than two complete pages in the record.  Therefore, the trial court
reasonably could have concluded that it was unlikely that presentation of this
evidence would consume an inordinate amount of time.  See Stephenson v.
State, 255 S.W.3d 652, 662 (Tex. App.CFort Worth 2008, pet. ref=d) (concluding that, when evidence
comprised only four pages in record, Athe jury was drawn away from the
indicted offenses only briefly.@).  In addition, because each witness testified to threats
made by a different person,[6] the trial
court could fairly conclude that the presentation of evidence would not merely
repeat evidence already admitted.

4.         Unfair Prejudice and
Confusion of the Issues and/or Jury

Rule 403
does not exclude all evidence that may be prejudicial to a party but, instead,
only that which poses a danger of Aunfair@ prejudice.  Mechler, 153
S.W.3d at 440.  Unfair prejudice refers to the tendency that relevant evidence
may tempt a jury into finding guilt on an improper basis, for reasons apart
from proof of the offense.  See id.; Gigliobianco, 210 S.W.3d at
642.  Here, because there was no evidence linking appellant to the threats, the
danger of unfair prejudice to the appellant was low.  See Castaldo, 78
S.W.3d at 350 (AThe danger of prejudice may be much lower when evidence of a
third party=s extraneous acts is offered.@); Brown, 505 S.W.2d at 856; Thomas,
137 S.W.3d at 795 (AThe danger of unfair prejudice against the defendant is lower
when evidence of a third party=s extraneous conduct is offered.@).

In
balancing the inherent probative value of the evidence and the State=s need for the evidence against Rule
403=s counterfactors, the trial court
reasonably could have concluded that the evidence was not unfairly prejudicial
and did not have a tendency to suggest a decision on an improper basis or to
confuse or mislead the jury.  Therefore, we cannot say the trial court abused
its discretion by overruling appellant=s Rule 403 objection.  We overrule
appellant=s third issue.

 

 








B.        Confrontation Clause

Finally,
appellant devotes his fourth issue to arguing that the admission of evidence of
ABlack=s@ threat against the complainants= family deprived appellant of his
constitutional right to confront witnesses against him.[7] 
See U.S. Const. amend. VI (AIn all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against
him.@).  Generally, the Confrontation
Clause bars the admission of out-of-court Atestimonial@ statements, unless the (1) declarant
is unavailable to testify, and (2) the defendant had a previous opportunity to
cross-examine the declarant.  Campos v. State, 256 S.W.3d 757, 761 (Tex.
App.CHouston [14th Dist.] 2008, pet. ref=d).

As a
threshold matter, we must determine whether the statement in question is
testimonial or nontestimonial in nature.  See id.  We review a
constitutional legal ruling, including whether a statement is testimonial,
under the de novo standard of review.  See id.; Dixon v. State,
244 S.W.3d 472, 481 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  The determination of whether a
statement is testimonial is decided Aby the standard of an objectively
reasonable declarant standing in the shoes of the actual declarant.@  Wall v. State, 184 S.W.3d
730, 742B43 (Tex. Crim. App. 2006).  








The
statement in question consists of an out-of-court threat uttered by ABlack@ to the Harris family.  Specifically,ABlack@ is said to have remarked, while
driving past the Harris=s home, that A[i]f something happened to [appellant] that he was going to .
. . kill [them] all.@  Appellant asserts that this statement is Atestimonial@ in nature, but appellant offers no
explanation or analysis to support that opinion.  See Tex. R. App.
P. 38.1(h).  We disagree with appellant=s conclusion.

Generally,
a statement is considered to be Atestimonial@ if it was a solemn declaration made
for the purpose of establishing some fact.  Dixon, 244 S.W.3d at 481
(citing Crawford v. Washington, 541 U.S. 36, 51 (2004)).  Although the
United States Supreme Court declined to explicitly define the term Atestimonial@ in Crawford, it described a Acore class of >testimonial= statements@ that includes (1) ex parte in-court
testimony, (2) affidavits, (3) depositions, (4) confessions, (5) custodial
examinations, and (6) statements made under circumstances that would lead an
objective witness to reasonably believe that the statement could be used at a
later trial.  See Crawford, 541 U.S. at 51B52.

The
statement in question was not made to a police officer or court official but,
rather, was uttered to Fred Shepherd under circumstances that would not lead an
objectively reasonable witness to believe that the statement would be available
for use later at trial.  See id. at 52.  In similar settings, other
Texas courts have concluded that such statements were not Atestimonial@ in nature.  See Mims v. State,
238 S.W.3d 867, 872 (Tex. App.CHouston [1st Dist.] 2007, no pet.) (holding that decedent=s early-morning statements to friend
were not testimonial); King v. State, 189 S.W.3d 347, 359 (Tex. App.CFort Worth 2006, no pet.) (concluding
that statements made to friends during conversations about how victim had died
and about disposing of victim=s body were non-testimonial); Campos v. State, 186
S.W.3d 93, 97 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (holding that statements
frantically made by complainant to neighbor in middle of night were not
testimonial).

We
conclude the testimony does not fall within any of the classes of testimonial
statements described in Crawford.  541 U.S. at 51B52.  Therefore, we hold the trial
court did not violate appellant=s constitutional confrontation right by admitting evidence of
the threat made by ABlack.@  We overrule appellant=s fourth issue.








                                                                CONCLUSION

Finding
no error in the appellate record, we affirm the trial court=s judgment.

 

 

/s/      J. Harvey Hudson

Senior Justice

 

 

 

 

Panel consists of Justices Anderson
and Frost, and Senior Justice Hudson.*

Do Not Publish.  Tex. R. App. P.
47.2(b).









            [1]  In his brief,
appellant specifically complains about the trial court=s failure to declare a mistrial, although appellant
did not request a mistrial on that basis.  See Tex. R. App. P. 33.1. 
Instead, we will liberally construe appellant=s argument as challenging the trial court=s adverse ruling on appellant=s objection
to the prosecutor=s remark.  See Tex. R. App. P. 38.9; Sanchez
v. State, 98 S.W.3d 349, 355 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d) (AIf the court is able to ascertain the nature of the
complaint from the argument, the issue will be preserved for appellate review.@).





            [2]  Emphasis added.





            [3]  Appellant also
objects to the evidence as hearsay and as violative of the Texas Constitution. 
However, appellant offers no argument or analysis to support these claims,
which we hold to be inadequately briefed.  See Tex. R. App. P. 38.1(h); Wyatt
v. State, 23 S.W.3d 18, 25 n.7 (Tex. Crim. App. 2000).





            [4]  See also
Lucky v. State, No. 05-02-00108-CR, 2003 WL 40670, at *5 (Tex. App.CDallas Jan. 6, 2003, no pet.) (mem. op., not
designated for publication) (ACastaldo establishes (1) that acts of third parties may
reflect on the character of the appellant, and (2) if they do, they are to be
excluded under rule 404(b) in the absence of any applicable exception.@) (citation omitted).





            [5]  See also
Ayres v. State, 105 Tex. Crim. 15, 17B18,
284 S.W. 960, 960 (1926); Thompson v. State, 35 Tex. Crim. 511, 523, 34
S.W. 629, 630 (1896).





            [6]  Although Jerome
indicated during voir dire examination that he had heard threats from both
appellant=s daughter and ABlack,@ his testimony before the jury was limited to
the threats made by appellant=s daughter. 
Fred=s testimony before the jury, by contrast, was confined
to the threats uttered by ABlack.@





            [7]  Appellant raises
a similar complaint with respect to the evidence of his daughter=s threats against the Harris family.  However, because
appellant did not object to that evidence on Confrontation Clause grounds, that
objection is not preserved for our review.  See Dewberry v. State, 4
S.W.3d 735, 752 n.16 (Tex. Crim. App. 1999); Oveal v. State, 164 S.W.3d
735, 739 n.2 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).





            * 
Senior Justice J. Harvey Hudson sitting by assignment.