James Marcus MARABLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–90–007–CR.

Court of Appeals of Texas,
Texarkana.

Nov. 13, 1990.

Rehearing Overruled Dec. 18, 1990.

Discretionary Review Refused
April 17, 1991.

Jimmy White, Mount Pleasant, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for appellee.

Before CORNELIUS, C.J. and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

James Marable appeals his conviction for possession of marihuana. The issues we address on this appeal concern the propriety of the prosecution's jury argument and the sufficiency of the evidence. We conclude that the prosecution's jury argument constitutes reversible error, but that sufficient evidence supports the verdict. Therefore, we reverse the judgment and remand the case for a new trial.

In August of 1989, while flying in a light plane, a game warden saw land with vegetation that he recognized as marihuana. Officers obtained a search warrant and searched the property. They found two fields of marihuana. The plants were approximately ten feet tall, planted in rows, and were partially screened from view by weeds and a planted row of corn. The officers harvested the plants, obtaining approximately ninety pounds of marihuana.

The marihuana patches were located on property rented by Mary Marable, the daughter of James and Virginia Marable, about two years before the issuance of the search warrant. All of the Marables resided on the property, which consists of about seventy acres. The largest patch of mari-

huana was located about 800 feet from the Marables' residence, approximately twenty feet behind a barn. A three-wheeled vehicle was parked beside the Marables' mobile home, and witnesses described a well-worn trail from the house, around the barn, to the marihuana patch. The officers' search revealed 1,500 to 2,000 used starter pots near the barn. Also near the barn was a homemade sprinkler system that had been painted in camouflage colors. The largest of the two marihuana patches was clearly visible from the barn.

The pivotal issue which we must first address concerns the prosecutor's jury argument. Marable asserts that the argument constitutes an improper comment on the failure of the defendant to testify.

Marable, his wife, Virginia, and daughter, Mary, were jointly tried and convicted of possession of marihuana. None of the defendants testified. During the summation of the case the prosecutor made the following remarks:

Now, I don't know what the defense is. Is the defense "Somebody else was growing it"? Is the defense, "We just didn't know it popped up in rows on our place"? Is the defense, "We were growing a garden and this stuff just popped up"? I don't know. I mean, I didn't hear that much of a defense.

The court overruled defense counsel's objection to the argument and denied a motion for mistrial. We now consider whether the argument constituted an improper comment on the failure of Marable to testify on his own behalf.

When a defendant elects not to testify, his silence is not a proper subject for comment, either directly or indirectly, by the prosecuting attorney. *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex.Crim.App.1984). Comments on a defendant's failure to testify violate TEX. CONST. art. I, § 10, as well as U.S. CONST. amend. V. Additionally, it is statutorily prohibited. TEX.CODE CRIM. PROC.ANN. art. 38.08 (Vernon 1979); *see also Bird v. State*, 527 S.W.2d 891, 893 (Tex.Crim.App.1975). In order for argument of this type to constitute reversible error it must either be manifestly intended

to be, or of such a character that the jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Griffin v. State*, 554 S.W.2d 688, 690 (Tex.Crim.App.1977). If the prosecutor's argument directs the jury's attention to evidence that is lacking, which only the defendant can supply, the defendant's conviction must be reversed. *Owen v. State*, 656 S.W.2d 458, 459 (Tex.Crim.App.1983). With these guidelines in mind, we now analyze the argument made by the prosecutor in the case against the Marables. The prosecutor argued that "I don't know what the defense is." Is it this? Is it that? "I mean, I didn't hear that much of a defense." By arguing that he does not know what the defense is, the prosecutor makes clear that he is not referring to or attacking any defensive theories which have actually been presented. This remark appears to patently direct the jury's attention to the fact that evidence is lacking that only the defendants could supply.

The argument in this case is similar to that condemned in *Cherry v. State*, 507 S.W.2d 549 (Tex.Crim.App.1974). There, the prosecutor argued as follows:

Now, what defenses are available to a person in a case like this? Number one, alibi, *I* was somewhere else, *I* was with someone else.

In that case, the court found that the prosecutor's use of the word "I" contradicted any theory that he was referring to witnesses other than the defendant. *Cherry v. State*, 507 S.W.2d at 550. Concerning argument of this nature, the *Cherry* decision has been closely adhered to. The Court of Criminal Appeals has subsequently held that,

When the word "I" is used in reference to something the defendant might have testified to, but did not, it is illogical to think that the jury is not reminded of the defendant's failure to testify. This is a classic example of what Article 38.08 was trying to prevent.

*Cook v. State*, 702 S.W.2d 597, 599 (Tex. Crim.App.1985). The remarks here, like those in *Cook*, are a classic example of prohibited argument. Here, however,

there were three defendants rather than one, and the first person pronoun "we" was used in reference to something any of the defendants might have testified to but did not. We are compelled to conclude that the prosecutor's argument in this case was an impermissible comment on the defendants' failure to testify. Having found error in the proceedings below and being unable to determine beyond a reasonable doubt that the error made no contribution to the conviction or the punishment, we are required to reverse the judgment. TEX.R. APP.P. 81(b)(2).

Ordinarily, we would reverse and remand this cause for a new trial without addressing other issues. However, in this case the defendant has challenged the sufficiency of the evidence to support his conviction. When the evidence is insufficient to support a conviction a defendant cannot be tried again. Therefore we are required to address the sufficiency of the evidence question.

In determining the question of sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). When the State's evidence is wholly circumstantial, as it is here, the evidence must exclude every reasonable hypothesis except the defendant's guilt; otherwise, a guilty verdict is not a rational finding. *Freeman v. State*, 654 S.W.2d 450, 454 (Tex.Crim. App.1983).

When a defendant is charged with possession of a controlled substance, the State must prove that he exercised care, control, or management over the substance and that he knew the object he possessed was contraband. *Rodriguez v. State*, 635 S.W.2d 552, 553 (Tex.Crim.App. [Panel Op.] 1982). Possession need not be exclusive. Evidence which shows that the accused jointly possessed the contraband with another is sufficient. *Rodriguez v. State*,

635 S.W.2d at 553. However, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that he knew of its existence and that he exercised control of it. *Nunn v. State,* 640 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982). This link may be established by showing additional facts and circumstances which establish the accused's knowledge and control of the contraband. *McGoldrick v. State,* 682 S.W.2d 573, 575 (Tex.Crim.App.1985). Thus, a review of the evidence is necessary.

■ Although the Marables were renting the property, they constructed a large greenhouse on it. Approximately 1,500 plant starter cups were found near the barn. They had been used and were the type commonly used to start small seedlings. There is evidence that there were only two cultivated areas on the farm, and that the marihuana had been planted in distinct rows and had been watered and fertilized. A single row of corn had also been planted and located so that it partially obstructed the visibility of the larger marihuana patch from a private farm road that paralleled one side of the property. As noted earlier, a three-wheeled vehicle was parked next to the Marables' residence, and a well-defined trail led from the residence around the barn to the largest marihuana patch. A water hose ran from the barn to the marihuana, and there were various other hoses designed for use as sprinklers. There was also the homemade sprinkler located beside the barn, only six or seven feet from the marihuana.

The evidence thus indicates that on property controlled and possessed by the Marables, two patches of marihuana were being carefully grown and tended. The Marables had been in sole possession of the property during all relevant times. There was evidence that James and Mary Marable built the greenhouse. Although there was evidence that Marable was a farmer, there was no indication that he was in the "nursery or greenhouse" business. The marihuana plants had been transplanted from pots and the majority of this occurred within 800 feet of the Marables' residence and within twenty feet of their barn.

Glen Bolt, an inmate of the jail, testified that while Marable was in jail he told him that he "had people harvesting his other marihuana, having it moved out" and that he would bring Bolt some marihuana to the jail. Bolt testified that Marable later brought a paper sack with marihuana to the jail and dropped it in the outside dumpster in accordance with their conversation.

Sufficient evidence supports the conviction. The evidence sufficiently links Marable to the planting, care, and control of the marihuana plants and is sufficient to exclude every other reasonable hypothesis.

Finding sufficient evidence to support the verdict, but concluding that the prosecutor's improper comment on the defendants' failure to testify constitutes reversible error, we reverse the judgment and remand the case for a new trial.

CORNELIUS, Chief Justice, dissenting.

I dissent. I do not believe the prosecutor's comments were an improper allusion to Marable's failure to testify, but that they were a reference to a defense actually presented by witnesses for Marable.

Comments on the accused's failure to testify violate the privileges against self-incrimination contained in the United States and Texas Constitutions, as well as the specific prohibition of TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1979). *Bird v. State,* 527 S.W.2d 891 (Tex.Crim.App.1975). For a comment to constitute such a violation, however, the implication that the language referred to the accused's failure to testify must be a necessary one. It is not sufficient that the language *might* be construed as an implied or indirect allusion. The test is whether the language was manifestly intended or was of such character that the jury would necessarily take it to be a comment on the accused's failure to testify. *Bird v. State, supra,* and authorities there cited.

Ordinarily, the use of personal pronouns in a comment about the *failure* to raise a defense necessarily refers to the defen-

dant's failure to testify. *Cook v. State,* 702 S.W.2d 597 (Tex.Crim.App.1984); *Cherry v. State,* 507 S.W.2d 549 (Tex.Crim.App. 1974). That is not true, however, if the comment is alluding to a defense *actually advanced* by the defendant through other witnesses, as distinguished from a *failure* to raise a defense. *Solis v. State,* 718 S.W.2d 857 (Tex.App.–Texarkana 1986), *rev'd on other grounds,* 792 S.W.2d 95 (Tex.Crim.App.1990).

In this case, Marable produced two defense witnesses, Jerry Davis and J.O. Borden. Davis was the principal of the school where Mrs. Marable (a co-defendant) taught. He testified about Mrs. Marable's apparent gardening activity, her bringing various plants, vegetables, and spices to school in trays and pots similar to those found on the Marables' farm, and that she had a greenhouse. This evidence was obviously produced to advance Marable's defense that they used the incriminating materials in harmless gardening, rather than in growing marihuana. Witness Borden testified that he owned 700 acres which adjoined the property leased by the Marables. He testified that he was a farmer and cattle raiser, as was James Marable, and that he had discovered marihuana growing on his own property that had completely escaped his notice in all of his farming operations. He further testified that he had been on the Marable property, that it was a "grown up" area, and that he did not ever see any marihuana plants on that property. It is obvious that this testimony was designed to advance Marable's defense that he was conducting usual farming and gardening activities on his place and it was not unusual for him to be unaware that marihuana was growing there.

In his argument the prosecutor was questioning the defense that had actually been advanced by the Marables' witnesses. Therefore, his use of the pronoun "we" did not refer to Marable's failure to testify. Rather, he was paraphrasing and questioning the defensive evidence Marable had actually produced through other witnesses. *Solis v. State, supra.*

For the reasons stated, I would affirm the judgment.