**Charles Craig SKIDMORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–90–035–CR.**

Court of Appeals of Texas,
Texarkana.

Aug. 31, 1992.

Discretionary Review Refused
Jan. 13, 1993.

See also, 808 S.W.2d 708.

---

Lew Dunn, Longview, for appellant.

Robert Newsom, Asst. Dist. Atty., Sulphur Springs, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Charles Craig Skidmore appeals his conviction for bodily injury to a child. In nine points of error, he contends that the State did not prove the culpable mental state required for the offense; that the great weight and preponderance of the evidence does not support his conviction; that the trial court's voir dire instructions were erroneous; that photographs and hearsay evidence were erroneously admitted; and that the prosecutor's closing argument impermissibly commented on his failure to testify. Skidmore also complains that the jury charge erroneously contained a reference to injury by omission and allowed a conviction based on his conduct rather than the result of the conduct, and that the charge should have included a requested instruction on temporary insanity.

The State's evidence showed the following: On January 22, 1989, Charles Skidmore and his companion, Kayla Shortnacy, gave a Super Bowl party at Skidmore's home. Skidmore drank beer and whiskey and smoked marihuana during the party. Skidmore went to sleep about 10:00 p.m. At about 11:00 p.m., he awoke abruptly and went in the kitchen to get something to eat. Kayla Shortnacy's three-year-old child, Susan, was in the kitchen. Skidmore started "patting" her on the stomach with his foot and then started kicking her. He then went to the bedroom and took Susan's covers and pillow. Kayla Shortnacy told Skidmore that Susan was using the pillow and the covers, and Skidmore said, "By God, I'll show her," and then grabbed Susan and dragged her down the hall. He took her to the bedroom and got on top of her. Kayla Shortnacy went to call for help, but could hear Susan crying in the bedroom and returned. She then went into the bedroom and tried to get Skidmore away from Susan, but Skidmore threw her (Kayla) across the room. Ultimately, Kayla Shortnacy got Susan away from Skidmore and out of the house. There was testimony from several witnesses that the child had swollen lips, a cut inside her upper lip, and bruises on her face, stomach, buttocks, and pubic area. There were both photographs and medical testimony showing the child's injuries. Skidmore relied on an insanity defense. The jury rejected his defense and set his punishment at ten years' confinement, probated.

Skidmore first contends that the State failed to prove he possessed the mental state required for this offense, and therefore his motion for instructed verdict should have been granted. In reviewing a ruling on a motion for instructed verdict, we view the evidence in the light most favorable to the judgment and affirm the conviction if any rational trier of fact could have found from the evidence the essential elements of the offense beyond a reasonable doubt. *Harris v. State*, 783 S.W.2d 253, 255 (Tex.App.–Dallas 1989, no pet.). The required culpable mental state for this offense is that of either intentionally or knowingly causing bodily injury to a child. Tex. Penal Code Ann. § 6.03 (Vernon 1974), and § 22.04(c) (Vernon 1989).[1] Proof of a culpable mental state is generally proven through circumstantial evidence, *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. [Panel Op.] 1978), and may be inferred from the defendant's acts and the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex.Crim.App. 1984).

Skidmore contends that much of the evidence of the child's injuries was erroneously admitted. However, as we discuss later, the photographs and the testimony about the child's statements to her mother were properly admitted. Furthermore, Kayla Shortnacy testified that she saw Skidmore kicking the child. Skidmore also relies on Kayla Shortnacy's testimony that she told several people that Skidmore did not know what he was doing. However, the child's statements, the photographs showing her bruises, the medical testimony concerning the child's injuries, Kayla Shortnacy's testimony of her observations, Skidmore's admission to the doctor that he had "beaten up" a child, and the State's psy-

1. *Amended by* Act of May 29, 1989, 71st Leg., ch. 357, § 1, 1989 Tex.Gen.Laws 1441, current version Tex.Code Crim.Proc.Ann. art. 22.04(f) (Vernon Supp.1992).

chologist's testimony combine to provide sufficient evidence from which a jury could find that Skidmore acted intentionally or knowingly in causing bodily injury to the child.

Skidmore also argues that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. We treat this as a factual sufficiency attack on the jury's rejection of Skidmore's only defensive theory— insanity. Insanity is an affirmative defense that must be proven by a preponderance of the evidence. TEX. PENAL CODE ANN. § 2.04(d) (Vernon 1974), and § 8.01 (Vernon 1974 & Supp.1992). The standard of review is whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990). Reversal is appropriate only if any rational trier of fact could not have determined that Skidmore failed to prove his defense of insanity by a preponderance of the evidence. *Patel v. State*, 787 S.W.2d 410, 412 (Tex.Crim.App. 1990).

The medical testimony was conflicting. Skidmore's expert, Dr. John Goodman, a licensed psychiatrist, opined that Skidmore had an illness known as "mixed seizure with complex symptomology." He also opined that Skidmore had a seizure at the time of the offense in which he lost consciousness. He based his opinion on Skidmore's prior history, observations during his hospitalization, and prior evaluations by another physician. Goodman believed that Skidmore could not have committed the injurious acts either intentionally or knowingly.

The State, on the other hand, relied on a psychologist, Dr. Henry Landrum, who testified that Skidmore's drug and alcohol abuse played a major role in his behavior. Landrum testified that Skidmore did not have a mental disease or defect consistent with any insanity defense. The State presented evidence that Skidmore used a great amount of alcohol and some marihuana shortly before the incident. Tests performed at the hospital were positive for both alcohol and marihuana. Kayla Shortnacy testified to Skidmore's use that day of drugs and alcohol. She also testified to his anger. In light of this evidence concerning sanity, any rational trier of fact could have found that Skidmore did not prove his defense of insanity by a preponderance of the evidence.

In his fifth point of error, Skidmore contends that the trial court erred during voir dire by instructing the jury about offenses not charged in the indictment. A trial judge's actions in voir dire instructions are grounds for reversal only when the comments are reasonably calculated to benefit the State or prejudice the defendant. *Beets v. State*, 767 S.W.2d 711, 744–45 (Tex.Crim.App.1987), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). Skidmore did not timely object to the instructions, thereby waiving any complaint. *Montoya v. State*, 744 S.W.2d 15, 19 (Tex.Crim.App.1987); *Rideau v. State*, 751 S.W.2d 248, 249 (Tex.App.— Beaumont 1988, no pet.); TEX.R.APP.P. 52(a).

Even had Skidmore properly preserved error, his contention is without merit. He argues that by including the word "omission" when discussing a parent's right to discipline a child and outlining the defense of *in loco parentis*, neither of which was mentioned in the indictment or in any pretrial pleadings, the trial court went beyond the bounds of properly qualifying the jury under TEX. CODE CRIM.PROC. ANN. art. 35.17 (Vernon 1989).[2] Skidmore relies on *Lopez v. State*, 779 S.W.2d 411 (Tex.Crim.App.1989), where an erroneous instruction on the law of intoxication was given to the jury. In this case, it cannot be said that the court was actually misstating the law. The court was simply reading the statute and giving a general overview of what might constitute an offense or defense under the statute. Skidmore further argues that the comments were harmful because it imposed on him the burden to prove a justification or defense. However, the trial court gave an extensive instruction of the burden of proof and the State's

---

**2.** *Amended by* Act of May 27, 1991, 72nd Leg., ch. 652, § 6, 1991 Tex.Gen. Laws 2395.

duty to prove its case beyond a reasonable doubt. The instructions, as a whole, were not harmful to Skidmore or beneficial to the State.

▮▮▮ Skidmore also asserts that the trial court erred in admitting certain photographs. The photographs, State's Exhibits 1–5, were taken of the child on the night of the incident. An officer testified that he was there when other pictures were taken, but not when these pictures were taken. The officer also testified that he examined the child and that each of the pictures fairly depicted the child as she appeared that night. Skidmore contends that the officer was not competent to authenticate the photographs because he was not present when they were taken. A photograph's admissibility does not depend on whether the witness was present at the time the photograph was taken. *DeLuna v. State*, 711 S.W.2d 44, 46 (Tex.Crim.App.1986). Since he had personal knowledge of the child's appearance on that occasion, the officer was competent to authenticate the photographs. TEX.R.CRIM.EVID. 602, 901(b)(1), 1002.

▮▮▮ In his seventh point of error, Skidmore alleges that the trial court erred in admitting hearsay statements by the victim. This evidence came in through the child's mother, Kayla Shortnacy, who testified that the child stated that Skidmore hit her. Skidmore's counsel objected on the basis of hearsay and subsequently took the witness on voir dire to determine the foundation of her statement. During this examination, Kayla Shortnacy testified that she was the first person the child talked to about the incident and that the child did not have an opportunity to talk to anyone else previously.

Skidmore contends that this testimony was inadmissible because it did not meet the admissibility or notice requirements of TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.1992), known as the outcry statute. Counsel's final objection at trial was, "I don't believe it meets the qualifications for an outcry or any other exception to the

hearsay rule." This objection did not specifically raise the issue of the State's notice to the defendant. Thus, Skidmore waived his complaint in this regard. TEX.R.APP.P. 52(a).

▮▮▮ Even assuming his complaint was preserved, this evidence was admissible as an exception to the hearsay rule. Article 38.072, and its notice requirements, applies only to statements otherwise inadmissible because of the hearsay rule.[3] The child's statement here was admissible as an exception to the hearsay rule as a present sense impression or as an excited utterance. TEX.R.CRIM.EVID. 803(1), (2). The statement was made only about a minute after the incident, and there was evidence that the child was under stress from the incident. This statement, admissible as an exception to the hearsay rule, was not within the ambit of the outcry statute.

In the eighth point of error, Skidmore contends the trial court erred in permitting the State to comment on his failure to testify. The following statement was made by the prosecutor while seated in the witness stand:

And he says something. And good Dr. Goodman says that during this time he would be basiccally (sic) incoherent and anything he said would just be illogical. But his statement is, take her back to Randy. I don't want the little whore here anymore. I'm sorry to have to say that, too. Terrible thing to say about a child. There's folks among us right here in this courtroom who say things like that, folks, about a three year old child.

Skidmore contends that this statement was harmful because the prosecutor assumed his "persona" by speaking in the first person while he was seated in the witness stand.

▮▮▮ The permissible areas of jury argument are (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) a plea for law enforce-

---

**3.** "A statement ... is not inadmissible *because of* the hearsay rule if [outcry and notice requirements are met]." TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(2)(b) (Vernon Supp.1992) (emphasis added).

ment. *Landry v. State*, 706 S.W.2d 105, 111 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986); *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983); *Jones v. State*, 725 S.W.2d 770, 771 (Tex.App.–Dallas 1987), pet. ref'd). Reversal is appropriate only if this Court concludes that the argument was improper and we cannot find beyond a reasonable doubt that the error did not contribute to the jury's guilty verdict. *Madden v. State*, 799 S.W.2d 683, 700–01 (Tex.Crim.App.1990). The failure of an accused to testify may not be a subject of comment by the prosecution. *Lopez v. State*, 793 S.W.2d 738, 741 (Tex. App.–Austin 1990), *pet. dism'd, improvidently granted*, 810 S.W.2d 401 (Tex.Crim. App.1991); U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1979). The rule is violated only if a prosecuting attorney uses language that is manifestly intended as, or is of such character that the jury would naturally and necessarily take it to be, a comment on the accused's failure to testify. *Allen v. State*, 693 S.W.2d 380, 381 (Tex. Crim.App.1984); *Lopez v. State*, 793 S.W.2d at 741.

■ This case is distinguishable from *Marable v. State*, 802 S.W.2d 3 (Tex.App.– Texarkana 1990, pet. ref'd), in which the prosecutor specifically referred to defenses which were not asserted. *Id.* at 4–5. In the argument before us, the prosecutor used the first person pronoun "I" in summing up the testimony of *Kayla Shortnacy*, not the supposed story that *Skidmore* would tell if he took the stand. In context, the argument was an attempt to undermine Skidmore's insanity defense by showing that he was coherent when making the statements just after the incident. Although the prosecutor was seated in the witness stand when speaking, at the worst, the comments only amounted to an implied or indirect allusion to Skidmore's failure to testify, rather than the necessary implica-

tion required for such argument to be error. *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Crim.App.1985); *Brown v. State*, 814 S.W.2d 477, 479 (Tex.App.–Dallas 1991, pet. ref'd).

■ We now turn to points of error dealing with the court's charge. In these points Skidmore contends that the trial court erred in charging the jury that the offense may be committed by omission. He contends that, since this offense concerned a specific act, mentioning omission in the charge was improper and invited the jury to find him guilty if he *omitted* some act concerning the child. He asserts that the charge is improper because it is not confined to the law applicable to the case. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1992). Where, as here, an erroneous charge is properly objected to at trial, the standard applied is whether the error is harmful and calculated to injure the rights of the defendant. *Burns v. State*, 703 S.W.2d 649, 651 (Tex.Crim.App. 1985). This standard requires a reversal if the defendant suffered some harm in light of the entire charge, all of the evidence, argument of counsel, and any other relevant information. *McGinty v. State*, 723 S.W.2d 719, 721 (Tex.Crim.App.1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984). In this case, there was no evidence presented and no argument made concerning any omissions on Skidmore's part which might have resulted in injury to the child. The State's entire theory was based on specific acts committed by Skidmore, and all of its evidence was directed to those acts. Thus, if the charge was erroneous in this respect, Skidmore was not harmed thereby.

■ Skidmore next argues that the charge was fundamentally erroneous because it allowed the jury to convict on the basis of *conduct* rather than the *results of that conduct*.[4] Because no objection was made to this alleged defect in the charge,

---

**4.** Under TEX. PENAL CODE ANN. § 22.04 (Vernon 1989) (amended 1989), a person commits an offense if he "intentionally [or] knowingly ... engages in conduct that causes to a child who is 14 years of age or younger ... serious bodily injury." The culpable mental state relates not to the nature of or circumstances surrounding the charged conduct, but to the result of that conduct. *Beggs v. State*, 597 S.W.2d 375 (Tex. Crim.App. [Panel Op.] 1980); *Westfall v. State*, 782 S.W.2d 951, 953 (Tex.App.–Austin 1990, pet. ref'd).

reversal is appropriate only if the error is fundamental and egregiously harmful. *Almanza v. State*, 686 S.W.2d at 172. Egregious harm "is presented when the reviewing court finds that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991). In making this determination, the entire charge, all evidence, the argument of counsel, and any other relevant matter should be considered. *Banks v. State*, 819 S.W.2d 676, 679 (Tex. App.–San Antonio 1991, pet. ref'd).

The definitional portion of the charge reads,

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

These definitions track the penal code. TEX. PENAL CODE ANN. § 6.03(a), (b).

Skidmore argues that the definition allowed the jury to find him guilty merely of conduct rather than the result of the conduct, as required under TEX. PENAL CODE ANN. § 22.04. In *Westfall v. State*, 782 S.W.2d 951 (Tex.App.–Austin 1990, pet. ref'd), and the cases there cited, the courts dealt with the application paragraphs of the charge, rather than definitions, which allowed the defendant to be convicted for his conduct rather than the result of that conduct. In *Westfall*, unlike here, there was an objection to the charge.

 It is clear that application paragraphs, if properly objected to, are erroneous when they do not clearly constrain the jury to base guilt on the resultive nature of the offense. *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App.1985). Although

Skidmore does not specifically complain on appeal about the application paragraph, we will consider it in our analysis. *Banks v. State*, 819 S.W.2d at 679.

In *Spang v. State*, 781 S.W.2d 713 (Tex. App.–Austin 1989, no pet.), the court stopped short of taking the position Skidmore urges here. That court commented,

*Alvarado* does not hold, and we are cited to no case holding, that the definitions of the culpable mental states should be tailored to the particular offense on trial even if no request or objection is made. While this might be the better practice, it does not necessarily follow from *Alvarado* that a charge that, without objection, tracks § 603 in defining the culpable mental states is erroneous.

*Spang v. State*, 781 S.W.2d at 715; *see also Alvarado v. State*, 704 S.W.2d 36. The *Spang* court went on to assume error in this definitional portion of the charge and, since there was no objection, conducted an egregious harm analysis. In finding no egregious harm, the court noted that the defendant offered no evidence that he was unaware that his conduct would cause serious bodily injury. *Spang v. State*, 781 S.W.2d at 715.

In *Sandow v. State*, 787 S.W.2d 588 (Tex. App.–Austin 1990, pet. ref'd), the court viewed an instruction that did not limit the culpable mental state to the result of the conduct as error, despite the lack of an objection. That court engaged in an analysis similar to *Spang*, finding that intent was not really an issue and that the jury argument did not improperly emphasize the instructions. The court concluded that there was no egregious harm. *Sandow v. State*, 787 S.W.2d at 596–97.

In *Banks v. State*, 819 S.W.2d 676, the court considered a charge virtually identical to that given here and found egregious harm. There, however, the defendant testified repeatedly that he *did not intend to injure the child but only to discipline him*. Additionally, the prosecutor in argument specifically told the jury that "the intent ... goes to conduct, not to the intent to cause bodily injury."

In this case, Skidmore did not testify, and he raised only an insanity defense. He did not contend that he had no intent to injure the child. He only contended that he did not know that his conduct was wrong. That is not the same as saying he only intended the act but not the injury. For example, his defense was not that he was disciplining the child or just playing with the child. Those are classic examples where one should not be convicted for conduct but only the result of conduct. Indeed, defense counsel succinctly presented his defense when he elicited testimony from Kayla Shortnacy. When asked by defense counsel if she made a statement that Skidmore "didn't mean to do it," she answered, "I didn't say he didn't mean to. I said he didn't know what he was doing." In other words, Skidmore's defense was that, while he intended to harm the child, he was not mentally competent to realize that what he did was wrong. Indeed, there was direct evidence that Skidmore intended to harm the child when his admission to the doctor that he "had beaten up" the child was admitted into evidence without objection.

Unlike the situation in *Banks*, in our case the prosecutor did not urge the jury to use the definitions contained in the charge and did not urge that intent went to conduct only and not harm. In view of the fact that Skidmore's only defensive theory was insanity, i.e., that he did not know harming the child was wrong, and that such defense was fairly and thoroughly presented by the court's charge, we find beyond a reasonable doubt that the error in the court's charge regarding intent did not contribute to the conviction or the punishment.

▆▆ Skidmore's last point of error asserts that the trial court erred in refusing his requested charge on temporary insanity. The statement of facts reflects the defense attorney's *statement* that he had filed one special requested charge and the court denied the request. However, the transcript reflects that no such request was ever filed. While it is questionable whether counsel's trial objection was specific enough to preserve error, *see* TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1992), and art. 36.15 (Vernon Supp. 1992), the charge given is substantially the same as that which Skidmore asserts should have been given. Moreover, the charge tracks the statutory definition of insanity. TEX. PENAL CODE ANN. § 8.01. The trial court's refusal to include this charge was not error.

This judgment is affirmed.

GRANT, J., concurs.

BLEIL, Justice, concurring.

I agree that there is no error requiring that the case be reversed, but write separately to express my disapproval of one aspect of the trial of this case. The trial court erred in allowing the State's attorney to make a part of the State's argument from the witness stand.[5]

There are four categories of active participants in a legal proceeding: the judge, the jurors, the attorneys, and the witnesses. The roles and purpose of each are distinct and unique.[6] While the State's attorney's taking the witness stand does not amount to giving testimony, it may well lend a particular type of credibility or authority to statements made in argument.

Unfortunately, the Texas Code of Criminal Procedure fails to set forth basic rules concerning an attorney's courtroom deco-

---

5. Skidmore's attorney objected to this conduct. However, the conduct is the type which should be corrected sua sponte as a contempt of court.

6. It is no accident that judges, jurors and attorneys are all prohibited from testifying as a witness in a case in which they are involved. *See* TEX.R.CIV.P. 18b(2)(c) (judge cannot testify; once again, this is a *civil* rule and not directly applicable to criminal proceedings); TEX. DISCIPLINARY R.PROF. CONDUCT 3.08 (1990), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1992) (attorney cannot testify; comment 4 to Rule 3.08 explains that the primary motivation behind restricting a lawyer from testifying as a witness is to prevent the confusion that such dual roles might cause for the finder of fact. Furthermore, if a lawyer's testimony involves a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party); TEX. GOV'T CODE ANN. § 62.105(1) (Vernon Supp.1992) (jurors cannot testify).

rum. The Texas Rules of Civil Procedure do provide that, during the trial of a case, an attorney should remain at his place at the bar. *See* TEX.R.CIV.P. 269(h). While the Texas Rules of Civil Procedure are not applicable in a criminal proceeding, the Texas Court of Criminal Appeals has recognized the applicability of a precursor to Rule 269(h) in a criminal case. *See Ex Parte Crenshaw*, 96 Tex.Crim. 654, 259 S.W. 587, 588 (1924). Furthermore, the common law governs in criminal cases where the Code is silent. TEX.CODE CRIM. PROC.ANN. art. 1.27 (Vernon 1977).[7] Under the common law, too, an attorney's conduct has been subject to restriction.[8] Argument from the witness stand is no more proper than would be argument from behind the judge's bench or from within the jury box.

The State's attorney's conduct in seating himself in the witness stand during the jury argument was manifestly improper and obviously was intended to be a nonverbal communication. The physical conduct of counsel, as opposed to verbal statements, may constitute nonverbal communication and thus be an independent basis for error.[9] It has been posited that ten percent of spoken communication is by the words we say, thirty percent by the sounds we make and sixty percent by body language, or nonverbal communication. *See* STEPHEN R. COVEY, THE SEVEN HABITS OF HIGHLY EFFECTIVE PEOPLE 241 (1989). The State's attorney intended to communicate to the jury something that would not be reviewable by looking to the words uttered. At oral argument, the State's attorney conceded that his assumption of the witness stand was "theatrics," designed to make a point to the jury.

As I have indicated, this conduct alone was improper, and the trial court erred in failing to sustain the objection to the conduct. The assumption of the witness stand by the State's attorney, coupled with the utterance of words which the defendant had spoken to Dr. Goodman, appears to have been a communication emphasizing the fact that the defendant did not testify.

Only because the relevant part of the State's attorney's argument was based on testimony from a witness other than the defendant, I can agree with the majority

---

7. Judges are part of the legal order, that is, part of a society in which human conduct is governed by rules. *See* LORD LLOYD OF HAMPSTEAD & M.D.A. FREEMAN, LLOYD'S INTRODUCTION TO JURISPRUDENCE 1097 (5th ed. 1985). From the tracings to our earliest roots in the common law, the principals in trial proceedings have had special places from which they operate.

The Texas Court of Criminal Appeals, commenting on the distinction between the judiciary and the bar, observed:

The relationship of court and attorneys, bench and bar, are reciprocal, and each, *in their proper sphere,* is clothed with powers, rights, and privileges, which are to be recognized and respected by the other. These relations should be recognized and respected alike by the bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction.

*Ex Parte Duncan*, 42 Tex.Crim. 661, 62 S.W. 758, 762 (1901) (emphasis added).

Because of common sense, as well as the common law, an attorney should know not to argue from the witness stand, and a judge should know not to tolerate it.

8. *See generally* Stephan Landsman, *The Rise of the Contentious Spirit: Adversary Procedure in Eighteenth Century England,* 75 CORNELL L.REV. 497 (1990). Initially, professional attorneys were all but excluded from the courtroom. As the adversarial system evolved in the 1730's,

"courts appear to have reinterpreted these limits not as a total ban but simply as a prohibition of speeches, observations, or arguments about the facts." *Id.* at 534.

It is hard to imagine a barrister in the Old Bailey assuming the witness stand during the course of addressing the court without being swiftly taken into custody for such an act of contempt.

9. *See Thompson v. State*, 651 S.W.2d 785, 787 (Tex.Crim.App.1983) (prosecutor's language in conjunction with pointing to defendant during jury argument was harmful error); *Bird v. State*, 527 S.W.2d 891, 894–95 (Tex.Crim.App. 1975) (harmful error for prosecutor to direct question to defendant during jury argument); *Hicks v. State*, 525 S.W.2d 177, 180 (Tex.Crim. App.1975) (prosecutor's statements combined with physical language during jury argument were harmful error); *but see Brown v. State*, 477 S.W.2d 617, 622 (Tex.Crim.App.1972) (while improper, it was not harmful error for prosecutor to address remarks to defendant during jury argument); *Wright v. State*, 422 S.W.2d 184, 189 (Tex.Crim.App.1967) (prosecutor's repeated jumping on piece of paper during jury argument to demonstrate defendant's conduct not harmful error absent request that jury be instructed to disregard), *vacated in part,* 408 U.S. 934, 92 S.Ct. 2850, 33 L.Ed.2d 746 (1972).

that the communication, both verbal and nonverbal, was only an implied or indirect allusion to Skidmore's failure to testify. Thus, I concur in the court's decision.