IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00388-CV

 

texas tape & label, co., 

                                                                                    Appellant

 v.

 

central freight lines, inc.

                                                                                    Appellees

 

 

 



From the 414th District
Court

McLennan County, Texas

Trial Court No. 2006-3594-5

 



order OF RECUSAL



 

            I hereby recuse myself from
further participation in this case.

 

                                                                                    _____________________________

                                                                                    REX
D. DAVIS

                                                                                    Justice

 

                                                                                    Date:
________________________






rough Johnson
County in Collier’s vehicle on their way to Missouri after a trip to San
Antonio and South Padre Island.  George, who did not have a driver’s license
and had sat in the front passenger seat for most of the trip, was driving for
Collier, who had started feeling ill.  An Alvarado police officer pulled over
George for speeding (82 mph in a 65 mph zone).  When the officer learned that
George did not have a driver’s license, he asked George to get out of the
vehicle.  The officer smelled marijuana odor on George and learned from George
that Collier owned the vehicle.  The officer approached Collier and learned
from her that there might be methamphetamine as well as needles in a bag on the
passenger-side floor board and that the needles had been used to inject
cocaine.  Another officer arrived, and a search yielded 10.27 grams of cocaine
and 1.37 grams of methamphetamine that were discovered in containers on the
passenger side.  The officers discovered approximately 132 grams of marijuana
inside a duffel bag that contained men’s clothing.  Also found were drug
paraphernalia, three marijuana joints, and approximately $1,000 in cash in a
wallet.

In his first issue, George complains of
the trial court’s admission of a DVD video and exclusion of letters that
Collier had sent to George.  We review a trial court’s evidentiary rulings for
abuse of discretion.  McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  “A trial court abuses its discretion when its decision is so
clearly wrong as to lie outside that zone within which reasonable persons might
disagree.”  Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.
1993).

George claims that the DVD should have
been excluded because it was not authenticated.  An item is authenticated by
evidence “sufficient to support a finding that the matter in question is what
its proponent claims.”  Tex. R. Evid.
901(a).  Examples of authentication include testimony of a witness with
knowledge that a matter is what it is claimed to be and opinion testimony
identifying a recorded voice.  Id. 902(b)(1), (5).

The video depicts (1) George sleeping in
his mobile home, (2) a coffee table or its drawer with a spoon containing a
white powdery substance and a plastic baggie with Batman emblems, and (3) a
background conversation that included George’s voice.  The record shows that
the DVD was found in George’s duffel bag retrieved from the searched vehicle.  Collier
was familiar with the inside of George’s home (George said she was living with
him) and identified George’s voice and recognized the coffee-table drawer as
the one in George’s home.  Because Collier had personal knowledge of the things
depicted in the video, she could authenticate them.  She is not required to
have been present when the video was made to be able to authenticate it.  See,
e.g., Skidmore v. State, 838 S.W.2d 748, 753 (Tex. App.—Texarkana 1992,
pet. ref’d).  The trial court did not abuse its discretion in finding that the
video was authenticated by Collier.

George also claims that the DVD video
should have been excluded because its prejudicial effect outweighed its
probative value.

In its seminal decision in Montgomery
v. State, the Court of Criminal Appeals identified four non-exclusive
factors to be considered in determining whether evidence should be excluded
under Rule 403.  Those factors were: (1) the probative value of the evidence;
(2) the potential to impress the jury in some irrational, yet indelible, way;
(3) the time needed to develop the evidence; and, (4) the proponent’s need for
the evidence. 

 

            More recently, the Court has
looked to the language of Rule 403 and restated the pertinent factors.

 

[A] trial court, when undertaking a Rule
403 analysis, must balance (1) the inherent probative force of the proffered
item of evidence along with (2) the proponent’s need for that evidence against
(3) any tendency of the evidence to suggest decision on an improper basis, (4)
any tendency of the evidence to confuse or distract the jury from the main
issues, (5) any tendency of the evidence to be given undue weight by a jury
that has not been equipped to evaluate the probative force of the evidence, and
(6) the likelihood that presentation of the evidence will consume an inordinate
amount of time or merely repeat evidence already admitted.  Of course, these
factors may well blend together in practice.

 

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim.
App. 2006) (footnotes omitted).

 

Newton v. State, 301 S.W.3d 315, 319 (Tex. App.—Waco
2009, pet. ref’d) (footnote
and citations omitted).

            Probative force of the
evidence:  The State asserts that the video is probative because it links
George with narcotics paraphernalia.  We agree.  This factor weighs in favor of
admissibility.

            Proponent’s need for that
evidence:  The trial court could have reasonably concluded that the State
had a need for the video because: (1) George did not own the vehicle and the
drugs were found under the front passenger seat where Collier was sitting at
the time of the stop; (2) Collier was an accomplice witness who said the drugs
were George’s, and George testified that the drugs were Collier’s; and (3)
items in the video (a spoon with a white powdery substance and a baggie with
Batman emblems) were similar to items found in the vehicle.  This factor weighs
in favor of admissibility.

            Tendency of evidence to
suggest a decision on an improper basis:  Collier could not identify the
white substance, and George’s counsel adequately cross-examined her about the
video.  Thus, the video had limited potential to impress the jury in an
irrational way.  This factor does not weigh in favor of exclusion of the evidence.

            Jury confusion or
distraction, undue weight, and amount of time or repetition:  These factors
concern whether presentation of the evidence consumed an inordinate amount of
time or was repetitious, and the evidence’s tendency to confuse or distract the
jury or to cause the jury to place undue weight on its probative value.  See
Gigliobianco, 210 S.W.3d at 641-42; Newton, 301 S.W.3d at 320.  The
video lasts only 79 seconds.  Collier’s testimony about the video was approximately
twenty hard-copy pages.  The video was not repetitious, and we do not believe
that it could cause jury confusion or distraction or cause the jury to give it
undue weight.  All of these factors favor admission.

            “Rule 403 ‘envisions
exclusion of [relevant] evidence only when there is a ‘clear disparity between
the degree of prejudice of the offered evidence and its probative value.’”  Newton,
301 S.W.3d at 322-23 (quoting Hammer v. State, 296 S.W.3d 555, 568 (Tex.
Crim. App. 2009).  We cannot say that there is a “clear disparity” between the
danger of unfair prejudice posed by the video and its probative value.  Thus, the
trial court did not abuse its discretion by overruling George’s Rule 403
objection.

            As for George’s complaint
about the trial court’s exclusion of letters that Collier wrote to George,
George asserts that those letters would have impeached Collier’s credibility.  George,
however, fails to explain how the letters would have impeached Collier’s
credibility, and on their face the letters do not evince relevance or impeachment
value.  Nor does George offer a legal basis for their admissibility. 
Accordingly, the trial court did not abuse its discretion in excluding the
letters.  We overrule issue one.

In George’s second issue, he asserts
that the accomplice-witness testimony was not sufficiently corroborated.  “A
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  “This accomplice
witness rule creates a statutorily imposed review and is not derived from
federal or state constitutional principles that define the legal and factual
sufficiency standards.”  Druery v. State, 225 S.W.3d 491, 498 (Tex.
Crim. App. 2007).

“When evaluating the sufficiency of
corroboration evidence under the accomplice-witness rule, we ‘eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the accused
with the commission of the crime.’”  Malone v. State, 253 S.W.3d 253,
257 (Tex. Crim. App. 2008) (quoting Solomon v. State, 49 S.W.3d 356, 361
(Tex. Crim. App. 2001)).  “There is no set amount of non-accomplice
corroboration evidence that is required for sufficiency purposes; ‘[e]ach case
must be judged on its own facts.’”  Id. (quoting Gill v. State,
873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).  “While the accused’s mere presence
in the company of the accomplice before, during, and after the commission of
the offense is insufficient by itself to corroborate accomplice testimony,
evidence of such presence, coupled with other suspicious circumstances, may
tend to connect the accused to the offense.”  Dowthitt v. State, 931
S.W.2d 244, 249 (Tex. Crim. App. 1996).  “Even apparently insignificant
incriminating circumstances may sometimes afford satisfactory evidence of
corroboration.”  Id.

George argues that his mere presence in
the vehicle, which Collier owned, is insufficient to show his possession of the
drugs, which were not found on his person.  But after eliminating Collier’s
testimony, we find that the following evidence sufficiently corroborated her
testimony and tended to connect George to the contraband under Counts One and
Two:


 The
 officer noted a marijuana odor on George.


 


 George
 told the officer during the search that the drugs were all his and that
 the officer had found it all.


 


 George
 admitted to prior cocaine and methamphetamine use.


 


 George
 admitted to once owning a “Looney Tunes” tin container, and such a
 container was found under the front passenger seat.  George said the he
 sat in the front passenger seat for most of the trip, and changed places
 with Collier to drive in Waco.  Inside the container were 9.3 grams of
 cocaine and 1.37 grams of methamphetamine, two needles, one small spoon,
 four paper clips, and a small plastic baggie covered with “Batman”
 emblems.


 


 A
 duffel bag containing men’s clothing was found in the rear of the
 vehicle.  George was the only male in the vehicle.  Inside the duffel
 bag’s pocket were six elastic bands, five unused needles, and a used
 needle.  Also inside the bag were a black camera case and a large bag of
 marijuana.  Inside the camera case were a small green plastic baggie with
 white powdery residue, a large clear plastic baggie, and a DVD.


 


 The
 DVD depicts three scenes:  (1) George sleeping in his mobile home, (2) a
 coffee table or its drawer with a spoon containing a white powdery
 substance and a plastic baggie with Batman emblems, and (3) a background conversation
 that included George’s voice.


 


 Also
 found were a Harley-Davidson wallet with about $1,000 in cash and George’s
 business card with notes on the back of it.  A narcotics task force
 officer testified that the notes were “dope notes” and indicated that the
 writer was dealing drugs.  The officer also said that, given the large
 amount of drugs, the variety of drugs, the cash, and the trip to South
 Texas (where drugs are cheaper to buy), someone in the vehicle was a drug
 dealer.


 


 In
 George’s letters to Collier during their pretrial incarceration, he asked
 Collier to claim the drugs, stated that he was “done shooting” and had no
 cravings since he was arrested, and suggested that they use the vacation
 as an explanation for the large amount of cash.


 

We overrule George’s second issue.

 

In his third issue, George asserts that
the evidence is factually insufficient to prove possession.  In a factual
sufficiency review, we ask whether a neutral review of all the evidence, though
legally sufficient, demonstrates either that the proof of guilt is so weak or
that conflicting evidence is so strong as to render the factfinder’s verdict
clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d. 404,
414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7. 
The appellate court “does not indulge in inferences or confine its view to
evidence favoring one side of the case.  Rather, it looks at all the evidence
on both sides and then makes a predominantly intuitive judgment. . . .”  Id. (quoting William Powers and Jack Ratliff, Another Look at “No Evidence” and
“Insufficient Evidence,” 69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s
determination.  Watson, 204 S.W.3d at 416-17.

George argues that the evidence is
insufficient to link him to the contraband.  The State was required to prove
beyond a reasonable doubt that the accused intentionally or knowingly possessed
the controlled substances, and to do so, the State had to establish:  (1) the
accused exercised control, management, or care over the substance, and (2) the
accused knew the matter possessed was contraband.  Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  Whether the evidence is direct or
circumstantial, “it must establish, to the requisite level of confidence, that
the accused’s connection with the drug was more than just fortuitous. . . .”  Id. at 405-06 (quoting Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995)).

The rule is designed to protect the
innocent bystander from conviction based solely upon his fortuitous proximity
to someone else’s drugs.  Poindexter, 153 S.W.3d at 406.  The rule
simply restates the commonsense notion that a person, such as a father, son,
spouse, roommate, or friend, may jointly possess property like a house but not
necessarily jointly possess the contraband found in that house.  Id.  Thus, “[w]hen the accused is not in exclusive possession of the place
where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional
independent facts and circumstances which affirmatively link the accused to the
contraband.”  Id. (quoting Deshong v. State, 625 S.W.2d
327, 329 (Tex. Crim. App. 1981)).[1]

Some circumstances that may link a
defendant to the controlled substance are:  (1) the defendant’s presence when
the search was executed; (2) the contraband was in plain view; (3) the
proximity to and accessibility of the contraband; (4) the defendant was under
the influence of contraband; (5) the defendant’s possession of other contraband
when arrested; (6) incriminating statements by the defendant when arrested; (7)
attempted flight by the defendant; (8) furtive gestures by the defendant; (9)
there was an odor of the contraband; (10) the presence of other contraband or
drug paraphernalia not included in the charge; (11) the defendant’s ownership
or right of possession of the place where the controlled substance was found;
(12) the drugs were found in an enclosed place; (13) there was a significant
amount of drugs; and (14) the defendant possessed weapons or large amounts of
cash.  Stubblefield v. State, 79 S.W.3d 171, 174 (Tex. App.—Texarkana
2002, pet. ref’d); see also Olivarez v. State, 171 S.W.3d 283, 291 (Tex.
App.—Houston [14th Dist.] 2005, no pet.); Lassaint v. State, 79 S.W.3d
736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); De La Garza v. State,
898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no pet.).  The number of links
present is not as important as the degree to which they tend to link the
defendant to the controlled substance.  Stubblefield, 79 S.W.3d at 174; Williams
v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref’d).

            The evidence shows that
Collier invited George to accompany her and her daughters to South Texas.  They
went in Collier’s vehicle, and George had full access to it.  The cocaine and
methamphetamine were discovered in a Looney Tunes container under the front
passenger seat, which George occupied for most of the trip.  When George was
driving, he still had access to the container.

            The arresting officer
noticed a marijuana odor on George, who admitted he had smoked marijuana within
an hour of being stopped.  A large amount of marijuana was in George’s duffel
bag.  Also in his duffel bag were unused hypodermic needles, which are commonly
associated with injecting methamphetamine and cocaine, and a baggie containing
a white powdery residue.  During the search of the vehicle, George told the
officer that all of the drugs were his, though at trial George said he meant
that all the marijuana was his.  And, when the officer asked if he had found
all the drugs, George told him that he had, which indicates that George knew
where they were.

            Collier testified that all
the drugs were George’s and that he had brought them on the trip initially
without her knowledge.  George used the methamphetamine and she used the
cocaine on the trip, and George had previously used methamphetamine in
Missouri.  She also said that she had given George the Looney Tunes container
in which the drugs were found a few months before the trip.  George testified
that the marijuana was his but that the methamphetamine and cocaine were not his
and must have belonged to Collier or her daughters.

            Collier said that the DVD
showed video inside of George’s home that included a baggie with Batman emblems
similar to those found in the vehicle.  The video also showed a spoon with a
white powdery substance.  Drug notes were found on the back of one of George’s
business cards, and a letter from George to Collier during their pretrial
incarceration asked her to claim possession of the drugs.  The letter also
stated that George was “done shooting” and was not having cravings.

By finding George guilty, the jury
obviously disbelieved George, and the record in this case warrants our
deference to the jury’s credibility determination.  As the sole judge of the
weight and credibility of the evidence, the jury bore the burden of accepting
or rejecting George’s version.  See Lancon v. State, 253 S.W.3d 699, 707
(Tex. Crim. App. 2008).  Therefore, considering all of the evidence in a
neutral light, we find that the evidence is factually sufficient to support the
jury’s guilty findings on Counts One and Two.  The proof of guilt is not so
weak nor the conflicting evidence so strong as to render the jury’s verdict
clearly wrong and manifestly unjust.  We overrule issue three.

Having overruled George’s three issues,
we affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed March 31, 2010

Do
not publish

[CRPM]









[1] Previously, this was
referred to as the “affirmative links” rule.  See Poindexter v. State,
153 S.W.3d 402, 406 (Tex. Crim. App. 2005).  However, the Court of
Criminal Appeals has cautioned against use of the term “affirmative links” as
suggesting “an independent test of legal sufficiency” and has chosen instead to
use only the term “‘link’ so that it is clear that evidence of drug possession
is judged by the same standard as all other evidence.”  Evans v. State,
202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).