

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00191-CR

**BRIAN LEROY GEORGE,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. F41845**

## MEMORANDUM  OPINION

A jury found Appellant Brian George guilty on three counts:  (1) possession, with intent to deliver, of a controlled substance (cocaine) in an amount of four grams or more but less than 200 grams; (2) possession of a controlled substance (methamphetamine) in an amount of four grams or more but less than 200 grams; and (3) possession of marijuana in an amount of four ounces or more but not more than five pounds.  George pled guilty to Count Three.  The trial court sentenced George to prison for fifty, twenty and two years, respectively, and fined him $10,000 on count one.  Raising three issues,

George appeals.  We will affirm.

George, his then-girlfriend Laura Collier, and Collier's two teenage daughters were driving through Johnson County in Collier's vehicle on their way to Missouri after a trip to San Antonio and South Padre Island.  George, who did not have a driver's license and had sat in the front passenger seat for most of the trip, was driving for Collier, who had started feeling ill.  An Alvarado police officer pulled over George for speeding (82 mph in a 65 mph zone).  When the officer learned that George did not have a driver's license, he asked George to get out of the vehicle.  The officer smelled marijuana odor on George and learned from George that Collier owned the vehicle. The officer approached Collier and learned from her that there might be methamphetamine as well as needles in a bag on the passenger-side floor board and that the needles had been used to inject cocaine.  Another officer arrived, and a search yielded 10.27 grams of cocaine and 1.37 grams of methamphetamine that were discovered in containers on the passenger side.  The officers discovered approximately 132 grams of marijuana inside a duffel bag that contained men's clothing.  Also found were drug paraphernalia, three marijuana joints, and approximately $1,000 in cash in a wallet.

In his first issue, George complains of the trial court's admission of a DVD video and exclusion of letters that Collier had sent to George.  We review a trial court's evidentiary rulings for abuse of discretion.  *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."

*Moreno v. State,* 858 S.W.2d 453, 463 (Tex. Crim. App. 1993).

George claims that the DVD should have been excluded because it was not authenticated. An item is authenticated by evidence "sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Examples of authentication include testimony of a witness with knowledge that a matter is what it is claimed to be and opinion testimony identifying a recorded voice. *Id.* 902(b)(1), (5).

The video depicts (1) George sleeping in his mobile home, (2) a coffee table or its drawer with a spoon containing a white powdery substance and a plastic baggie with Batman emblems, and (3) a background conversation that included George's voice. The record shows that the DVD was found in George's duffel bag retrieved from the searched vehicle. Collier was familiar with the inside of George's home (George said she was living with him) and identified George's voice and recognized the coffee-table drawer as the one in George's home. Because Collier had personal knowledge of the things depicted in the video, she could authenticate them. She is not required to have been present when the video was made to be able to authenticate it. *See, e.g., Skidmore v. State,* 838 S.W.2d 748, 753 (Tex. App.—Texarkana 1992, pet. ref'd). The trial court did not abuse its discretion in finding that the video was authenticated by Collier.

George also claims that the DVD video should have been excluded because its prejudicial effect outweighed its probative value.

> In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under Rule 403. Those

factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence.

More recently, the Court has looked to the language of Rule 403 and restated the pertinent factors.

[A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted).

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (footnote and citations omitted).

*Probative force of the evidence*: The State asserts that the video is probative because it links George with narcotics paraphernalia. We agree. This factor weighs in favor of admissibility.

*Proponent's need for that evidence*: The trial court could have reasonably concluded that the State had a need for the video because: (1) George did not own the vehicle and the drugs were found under the front passenger seat where Collier was sitting at the time of the stop; (2) Collier was an accomplice witness who said the drugs were George's, and George testified that the drugs were Collier's; and (3) items in the video

(a spoon with a white powdery substance and a baggie with Batman emblems) were similar to items found in the vehicle. This factor weighs in favor of admissibility.

*Tendency of evidence to suggest a decision on an improper basis*: Collier could not identify the white substance, and George's counsel adequately cross-examined her about the video. Thus, the video had limited potential to impress the jury in an irrational way. This factor does not weigh in favor of exclusion of the evidence.

*Jury confusion or distraction, undue weight, and amount of time or repetition*: These factors concern whether presentation of the evidence consumed an inordinate amount of time or was repetitious, and the evidence's tendency to confuse or distract the jury or to cause the jury to place undue weight on its probative value. *See Gigliobianco*, 210 S.W.3d at 641-42; *Newton,* 301 S.W.3d at 320. The video lasts only 79 seconds. Collier's testimony about the video was approximately twenty hard-copy pages. The video was not repetitious, and we do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight. All of these factors favor admission.

"Rule 403 'envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Newton,* 301 S.W.3d at 322-23 (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the video and its probative value. Thus, the trial court did not abuse its discretion by overruling George's Rule 403 objection.

As for George's complaint about the trial court's exclusion of letters that Collier wrote to George, George asserts that those letters would have impeached Collier's

credibility. George, however, fails to explain how the letters would have impeached Collier's credibility, and on their face the letters do not evince relevance or impeachment value. Nor does George offer a legal basis for their admissibility. Accordingly, the trial court did not abuse its discretion in excluding the letters. We overrule issue one.

In George's second issue, he asserts that the accomplice-witness testimony was not sufficiently corroborated. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). "This accomplice witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

"When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we 'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.'" *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). "There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; '[e]ach case must be judged on its own facts.'" *Id.* (quoting *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)). "While the accused's mere presence in the company of the accomplice before, during, and after

the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id.*

George argues that his mere presence in the vehicle, which Collier owned, is insufficient to show his possession of the drugs, which were not found on his person. But after eliminating Collier's testimony, we find that the following evidence sufficiently corroborated her testimony and tended to connect George to the contraband under Counts One and Two:

- The officer noted a marijuana odor on George.

- George told the officer during the search that the drugs were all his and that the officer had found it all.

- George admitted to prior cocaine and methamphetamine use.

- George admitted to once owning a "Looney Tunes" tin container, and such a container was found under the front passenger seat. George said the he sat in the front passenger seat for most of the trip, and changed places with Collier to drive in Waco. Inside the container were 9.3 grams of cocaine and 1.37 grams of methamphetamine, two needles, one small spoon, four paper clips, and a small plastic baggie covered with "Batman" emblems.

- A duffel bag containing men's clothing was found in the rear of the vehicle. George was the only male in the vehicle. Inside the duffel bag's pocket were six elastic bands, five unused needles, and a used needle. Also inside the bag were a black camera case and a large bag of marijuana. Inside the camera case were a small green plastic baggie with white powdery residue, a large clear plastic baggie, and a DVD.

- The DVD depicts three scenes: (1) George sleeping in his mobile home, (2) a coffee table or its drawer with a spoon containing a white powdery substance

and a plastic baggie with Batman emblems, and (3) a background conversation that included George's voice.

- Also found were a Harley-Davidson wallet with about $1,000 in cash and George's business card with notes on the back of it. A narcotics task force officer testified that the notes were "dope notes" and indicated that the writer was dealing drugs. The officer also said that, given the large amount of drugs, the variety of drugs, the cash, and the trip to South Texas (where drugs are cheaper to buy), someone in the vehicle was a drug dealer.

- In George's letters to Collier during their pretrial incarceration, he asked Collier to claim the drugs, stated that he was "done shooting" and had no cravings since he was arrested, and suggested that they use the vacation as an explanation for the large amount of cash.

We overrule George's second issue.

In his third issue, George asserts that the evidence is factually insufficient to prove possession. In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7. The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate

court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

George argues that the evidence is insufficient to link him to the contraband. The State was required to prove beyond a reasonable doubt that the accused intentionally or knowingly possessed the controlled substances, and to do so, the State had to establish: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether the evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. . . ." *Id.* at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

The rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406. The rule simply restates the commonsense notion that a person, such as a father, son, spouse, roommate, or friend, may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* Thus, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625

S.W.2d 327, 329 (Tex. Crim. App. 1981)).[1]

Some circumstances that may link a defendant to the controlled substance are: (1) the defendant's presence when the search was executed; (2) the contraband was in plain view; (3) the proximity to and accessibility of the contraband; (4) the defendant was under the influence of contraband; (5) the defendant's possession of other contraband when arrested; (6) incriminating statements by the defendant when arrested; (7) attempted flight by the defendant; (8) furtive gestures by the defendant; (9) there was an odor of the contraband; (10) the presence of other contraband or drug paraphernalia not included in the charge; (11) the defendant's ownership or right of possession of the place where the controlled substance was found; (12) the drugs were found in an enclosed place; (13) there was a significant amount of drugs; and (14) the defendant possessed weapons or large amounts of cash. *Stubblefield v. State*, 79 S.W.3d 171, 174 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no pet.). The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Stubblefield*, 79 S.W.3d at 174; *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd).

---

[1] Previously, this was referred to as the "affirmative links" rule. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). However, the Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and has chosen instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).

The evidence shows that Collier invited George to accompany her and her daughters to South Texas. They went in Collier's vehicle, and George had full access to it. The cocaine and methamphetamine were discovered in a Looney Tunes container under the front passenger seat, which George occupied for most of the trip. When George was driving, he still had access to the container.

The arresting officer noticed a marijuana odor on George, who admitted he had smoked marijuana within an hour of being stopped. A large amount of marijuana was in George's duffel bag. Also in his duffel bag were unused hypodermic needles, which are commonly associated with injecting methamphetamine and cocaine, and a baggie containing a white powdery residue. During the search of the vehicle, George told the officer that all of the drugs were his, though at trial George said he meant that all the marijuana was his. And, when the officer asked if he had found all the drugs, George told him that he had, which indicates that George knew where they were.

Collier testified that all the drugs were George's and that he had brought them on the trip initially without her knowledge. George used the methamphetamine and she used the cocaine on the trip, and George had previously used methamphetamine in Missouri. She also said that she had given George the Looney Tunes container in which the drugs were found a few months before the trip. George testified that the marijuana was his but that the methamphetamine and cocaine were not his and must have belonged to Collier or her daughters.

Collier said that the DVD showed video inside of George's home that included a baggie with Batman emblems similar to those found in the vehicle. The video also

showed a spoon with a white powdery substance. Drug notes were found on the back of one of George's business cards, and a letter from George to Collier during their pretrial incarceration asked her to claim possession of the drugs. The letter also stated that George was "done shooting" and was not having cravings.

By finding George guilty, the jury obviously disbelieved George, and the record in this case warrants our deference to the jury's credibility determination. As the sole judge of the weight and credibility of the evidence, the jury bore the burden of accepting or rejecting George's version. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Therefore, considering all of the evidence in a neutral light, we find that the evidence is factually sufficient to support the jury's guilty findings on Counts One and Two. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust. We overrule issue three.

Having overruled George's three issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed March 31, 2010
Do not publish
[CRPM]